*330 OPINION OF THE COURT
Alexander, J.
Having been convicted after a jury trial of first degree sexual abuse, first degree attempted sodomy, endangering the welfare of a child and fourth degree criminal possession of a weapon, defendant appeals by leave of an Associate Judge of this court, from the Appellate Division order unanimously affirming, without opinion, the judgment of conviction.
*331 The principal issues presented are whether the hearing court’s refusal to allow defendant to call the complaining witness to testify at a combined Huntley and Wade hearing (People v Huntley, 15 NY2d 72; United States v Wade, 388 US 218) denied him a constitutional or statutory right to present relevant evidence on the issue of the suggestiveness of a pretrial lineup identification procedure, whether the lineup was unduly suggestive, and whether the lineup identification should have been suppressed in any event because it was the fruit of an unlawful arrest.
I
While on her way to school on April 7, 1986, Shanica F., who was then 10 years old, stopped in front of a building on West 131st Street in Manhattan to tie her shoe. A man, whom she later identified as the defendant, grabbed her from behind, threatened her with a knife and compelled her to accompany him to the roof where he sexually abused her and attempted to sodomize her.
Shanica pushed the defendant and, as he stumbled, she managed to escape by running past him and down the stairs. As she ran down the stairs she cried for help and pounded on apartment doors. Defendant fled down the stairs also. One of the tenants, Shermain Thompson, hearing the screams and the commotion, came out of her apartment, saw Shanica with her clothes in disarray and assisted her while a friend called the police. As Shanica described her attacker to the police who responded, Ms. Thompson realized that Shanica was describing the defendant, whom Ms. Thompson knew to be a friend of her brother, Sherman Thompson, and whom she had encountered in the building a scant half-hour earlier.
Detective Bruno Francisci was assigned to the case. He interviewed Shanica at the hospital where she had been taken. Shanica told him what had happened and gave him a description of her attacker and his knife. She described her attacker as a light-skinned Black male, with short black hair, wearing a black baseball cap with white writing on the front and black-framed glasses. The assailant had told Shanica that his name was "Oscar.” Francisci also interviewed Shermain and Sherman Thompson. Shermain indicated that based on the description she heard Shanica give the police, she recognized the assailant as an acquaintance of her brother and as the person she had seen in the building that morning. Sher *332 man Thompson, interviewed separately, indicated that he knew the person described by his sister as "Apache” and gave Francisci a description similar to that given by Shanica and Shermain.
Francisci gave his card to the Thompsons and to Larry Washington, another friend who also knew "Apache”, and instructed them that if the man known as "Apache” should again "come into the area” they were to call 911, describe him and "present themselves” and tell the police that "the guy— was in the building at the time of the incident.”
Two days later, police officers responding to a radio run directing them to the 131st Street building, found a number of civilians holding the defendant. The officers were told that defendant was the man who had "raped” a 10-year-old girl two days before. One of the male civilians gave the officers Detective Francisci’s business card and said that Francisci was handling the case. The officers summoned their supervisor, the sergeant on patrol, who shortly arrived at the scene. The officers informed the sergeant that the people holding defendant had given them Francisci’s business card and had said that defendant had raped a little girl. The sergeant was familiar with the case; he remembered the original police report which indicated that both Shermain Thompson and the victim could identify the perpetrator. He determined that defendant should be taken to the precinct house. Defendant did not resist his detention and transportation, but protested that he had done nothing.
Later that afternoon, after administering Miranda warnings (Miranda v Arizona, 384 US 436) to defendant, Francisci took a statement in which defendant denied any complicity in the events of April 7 and explained his presence at the 131st Street building on April 9. Francisci arranged for Shanica and her father to attend a lineup at the 20th Precinct where defendant was being detained. Defendant was isolated in a room where neither Shanica nor her father could see him. Four fill-ins were secured and placed in the lineup with defendant who chose the number 2. Viewing the lineup with only Detective Francisci present, Shanica identified defendant as her attacker within 10 seconds.
At the combined Huntley-Wade hearing, defense counsel requested that the People be required to produce Shanica to sustain their burden of going forward to establish the propriety of the pretrial identification. Counsel argued that be *333 cause he had not been present at the prearraignment lineup and because his attempts to interview Shanica had been prevented by Francisci he had not been able to "discover what exactly, what police procedures were used”. He contended that under existing precedent the People had "the burden of producing the complainant, the identifying witness for the purpose of sustaining the[ir] legality of the misarranged [sic] confrontation.”
The People argued, however, that a bifurcated hearing should be held to determine, initially, whether the lineup procedures were unduly suggestive and, if so, to then proceed to determine whether the complaining witness’s identification was grounded upon an independent basis, free of the taint of the suggestive lineup procedures. The court agreed with the People’s position and ordered a bifurcated hearing.
As the hearing was about to proceed, defense counsel was furnished with a color photograph of the lineup together with a lineup form describing the ages, heights and weights of the stand-ins, who, respectively, were: number 1: 22 years old, 5 feet 8 inches, 140 pounds; number 3: 29, 5 feet 7 inches, 140 pounds; number 4: 17, 5 feet 7 inches, 140 pounds; and number 5: 21, 5 feet 7 inches, 130 pounds.[1] The photograph and lineup form were received in evidence.
Counsel argued that because three of the fill-ins had "significantly darker” complexions than defendant, who had been described as a "light-skinned Black male wearing dark clothes” and because the only fill-in arguably of a hue similar to defendant’s complexion was Hispanic and was dressed in light clothes, the lineup was prima facie suggestive, thus necessitating the People having to call Shanica to sustain their burden. The application was summarily denied and the hearing proceeded.
Detective Francisci and Officers Burns and Dibisceglio, the two officers who had responded on April 9, testified to the facts as outlined above. Defense counsel renewed his application to call Shanica, this time as a defense witness, "for the purpose of determining whether there was any such activity [of suggestiveness] regarding the police arranged confrontation between [defendant] and Shanica F[]”. He again remarked upon the fact that he had not been present at the lineup and *334 that Shanica was the only person having information about the lineup other than the police officers. He also renewed his argument that the photograph of the lineup demonstrated, prima facie, undue suggestiveness. The court denied the application, finding that no undue suggestiveness had been shown and concluding that there had been no showing of a need to call the complaining witness to establish an independent basis for an in-court identification.
Defense counsel then proffered two additional bases upon which he claimed to be entitled to call Shanica as a witness: that defendant had been deprived of his right to counsel at the lineup by virtue of an unreasonable 40-hour delay between arrest and arraignment[2] and that the police lacked probable cause for defendant’s arrest. He argued that the lineup identification should be suppressed based on either ground and that Shanica should be called to determine whether an independent basis existed for her in-court identification.
In a written decision the court denied suppression of defendant’s statements[3] and the lineup identification, concluding that no undue suggestiveness had been demonstrated, and thus there was no need to produce the complaining witness at the hearing.
The Appellate Division affirmed defendant’s conviction, without opinion. We now also affirm.
II
Recognizing that he has no right to compel the People to produce the complaining witness at the Wade hearing (People v Blue, 31 NY2d 1002, affg 37 AD2d 581), defendant asserts an unqualified right to call the complainant as his witness to present relevant evidence and that because he was denied this right he is entitled to a new hearing. He argues the complainant had relevant evidence because she viewed the lineup and was "the only means by which the defense [could] meaningfully supplement or challenge the People’s case.” Defendant urges that this right derives from the Compulsory Process Clause of the Federal Constitution and CPL 60.15 (1) and further argues that, in any event, he should have this right as *335 a matter of fairness because he had the ultimate burden of showing that the lineup was suggestive. As a separate basis for reversal, defendant contends that the lineup should have been suppressed as the fruit of an unlawful arrest and, as the People failed to demonstrate an independent source for the witness’s in-court identification, "it should have been suppressed as well.
Contrary to defendant’s assertions, suppression was not required on any of the grounds advanced.
A
We note at the outset that, since this was a prearraignment lineup occurring before the filing of an accusatory instrument, defendant’s right to counsel had not attached (People v Hawkins, 55 NY2d 474, 482-488) and the fact that counsel was not present at the lineup is of no legal consequence.
It is firmly established in our jurisprudence that unduly suggestive pretrial identification procedures violate due process and therefore are not admissible to determine the guilt or innocence of an accused (United States v Wade, 388 US 218, supra; People v Blake, 35 NY2d 331; People v Riley, 70 NY2d 523; People v Adams, 53 NY2d 241). We have held that "[s]howup identifications, by their nature [are] suggestive [and] are strongly disfavored” (People v Riley, supra, at 529). By contrast corporeal lineups, properly conducted, generally provide a reliable pretrial identification procedure and are properly admitted unless it is shown that some undue suggestiveness attached to the procedure. While the People have the initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness in a pretrial identification procedure, it is the defendant who bears the ultimate burden of proving that the procedure was unduly suggestive (People v Berrios, 28 NY2d 361). Where suggestiveness is shown, it is the People’s burden to demonstrate the existence of an independent source by clear and convincing evidence (People v Rahming, 26 NY2d 411, 417). Absent some showing of impermissible suggestiveness, however, there is no burden upon the People, nor is there any need, to demonstrate that a source independent of the pretrial identification procedure exists for the witness’s in-court identification (People v Rahming, 26 NY2d 411, supra; People v Berrios, supra).
*336 Here, the hearing court determined that the People had satisfied their initial burden and that the lineup procedure employed was not unduly suggestive. That determination, undisturbed by the Appellate Division, if supported by the record is beyond our review unless there is an alleged error of law. (People v Wilson, 64 NY2d 634; People v Dickerson, 50 NY2d 937, affg 67 AD2d 122; see also, People v Rodriguez, 64 NY2d 738, 740-741.)
Contrary to defendant’s contention, the hearing evidence does not establish, prima facie, that the lineup was unduly suggestive as a matter of law. Defendant premises his argument solely upon the fact that three of the fill-ins had complexions "considerably darker” than that of the defendant, who had been described as a "light-skinned Black male”, and that only one of the fill-ins, whom defendant contends was Hispanic, had a complexion reasonably close to his own. There is no requirement, however, that a defendant in a lineup be surrounded by people nearly identical in appearance (People v Mason, 138 AD2d 411, 412; People v Collins, 136 AD2d 720, 721). Here the implicit finding of the hearing court was that the difference in skin tone of three of the fill-ins, when considered together with the similarity of age, height and body type of all the fill-ins was not sufficient to create a substantial likelihood that the defendant would be singled out for identification. We cannot say on this record that this determination was erroneous as a matter of law.
B
Defendant argues that the lineup identification must be suppressed in any event because the court erred in precluding him from calling the 10-year-old complainant as his witness and therefore denied him a constitutional and statutory right to present relevant evidence. This argument must be rejected.
The right of compulsory process is essentially a trial right, enabling an accused to present his own version of the facts to the trial jury (Chambers v Mississippi, 410 US 284; Webb v Texas, 409 US 95; Washington v Texas, 388 US 14). Where the determination at issue is the guilt or innocence of an accused, due process requires that an accused be able to present witnesses in his own defense "to the jury so it may decide where the truth lies.” (Washington v Texas, 388 US, at 19, supra.) Although this right has been characterized as "fundamental” (Chambers v Mississippi, 410 US, at 302, supra), even *337 at trial it is not absolute and may yield to policy considerations such as the State’s interest in the orderly conduct of trials (Taylor v Illinois, 484 US 400, 414-416 [defense denied compulsory process as a discovery sanction]).
Similarly, while CPL 60.15 (1) affords defendant, as well as the prosecution, a right to call witnesses at a criminal proceeding, that right is not absolute, and nothing in the language of the statute warrants construing it, in the circumstances of this case, as conferring on defendant a right of compulsory process broader than that accorded by the Federal Constitution.
Here, defendant does not assert a trial right of compulsory process, but rather an unqualified right to present relevant evidence at a Wade hearing which, although properly characterized as a criminal proceeding, concededly does not involve a determination of his guilt or innocence (see People v Berzups, 49 NY2d 417,421; People v Ayala, 75 NY2d 422,428-429). Rather, the purpose and function of the Wade hearing is to determine whether a police-arranged pretrial identification procedure such as a lineup, was unduly suggestive (Stovall v Denno, 388 US 293). To be contrasted is a preliminary hearing, which has been acknowledged as being a critical stage of the criminal process (see, Coleman v Alabama, 399 US 1, 9) that "conceptually and pragmatically may serve as a virtual minitrial of the prima facie case” (People v Hodge, 53 NY2d 313, 318).
Defendant offers no persuasive authority for the proposition that an absolute right to compulsory process attaches to a Wade hearing. Rather, as at trial, any right of compulsory process at a Wade hearing may be outweighed by countervailing policy concerns, properly within the discretion and control of the hearing Judge. To hold otherwise would, in our view, only encourage the misuse of Wade hearings. To accord every defendant an absolute right to call an identifying witness at a Wade hearing would enable defendants to harass identifying witnesses and to transform the hearing into a discovery proceeding neither authorized nor contemplated by the Legislature (see, People v Hodge, 53 NY2d 313, 318, supra).
Indeed we have held in respect to pretrial hearings more directly addressing the guilt or innocence of an accused that a defendant’s right to require the production of a witness with relevant testimony could be outweighed by countervailing policy considerations (People v Petralia, 62 NY2d 47, 52-53). *338 There, at a suppression hearing addressing the issue of probable cause to arrest for the sale of narcotics, we held that the defendant could not require the testimony of an undercover police officer who allegedly purchased the drugs unless evidence at the hearing demonstrated a substantial issue as to the legality of the arrest. Even though the undercover had relevant testimony to offer — he obviously was present at and participated in the sale — we noted that as long as other evidence at the hearing sufficiently established probable cause, policy considerations militated against requiring the officer to appear at the hearing (id.). These considerations included, inter alia, preventing suppression hearings from being used as tools to pressure the prosecution into accepting a plea more favorable to the defendant in order to avoid compromising the undercover’s safety or the integrity of pending investigations (id., at 53).
Similar policy considerations, as already noted, militate against a rule that would render the identifying witness subject to compulsory process at the behest of the defendant absent some indication that the pretrial identification procedure was suggestive. This is not to say, however, that an identification witness’s testimony may never be required. Such a witness’s testimony might become necessary if the hearing evidence raises substantial issues as to the constitutionality of the lineup, the resolution of which could not be properly resolved without testimony from the identification witness. Thus, in People v Ocasio (134 AD2d 293, 294) the court held that testimony from the identifying witnesses was needed when a detective’s testimony about showing a photo array to several witnesses left open the possibility that a witness who had already viewed the array influenced or suggested another witness’s identification of defendant.
The dissent’s concern that defendant was unfairly precluded from questioning the complainant about the possibility of suggestiveness at the Wade hearing (dissenting opn, at 341) overlooks the fact that defendant will be able to examine the witness and explore issues relevant to identification at trial. Due process does not require that in every case a hearing be conducted outside the presence of the jury to determine the admissibility of identification evidence (Watkins v Sowders, 449 US 341, 347-349). Any improprieties in pretrial identification procedures can be investigated under the "time-honored process of cross-examination” (id., at 349). " 'Counsel can both cross-examine the identification witnesses and argue in sum *339 mation as to factors causing doubts as to the accuracy of the identification — including reference to both any suggestibility in the identification procedure and any countervailing testimony such as alibi.’ ” (Manson v Brathwaite, 432 US 98, 114, n 14, quoting Clemons v United States, 408 F2d 1230, 1251 [concurring opn] [n omitted].)
Here, no indicia of suggestiveness was presented to the hearing court, nor indeed even at trial. Defendant’s primary contention was that the complainant might offer testimony that the varied complexions of the subjects of the lineup rendered the procedure unduly suggestive. As the court already had a photograph of the lineup before it, the complainant’s testimony on this point could only have been cumulative and it was therefore within the discretion of the hearing Judge to exclude it. Defendant’s additional contentions that the complainant might have revealed that something improper was said to her during the procedure are, on the record before the hearing Judge, purely speculative. Thus, in the circumstances of this case, the court did not abuse its discretion in denying defendant’s request to call the complainant at the Wade hearing.
C
Defendant’s contention that the lineup identification was erroneously admitted because the police lacked probable cause to arrest him must also be rejected. A finding that probable cause existed for defendant’s arrest is implicit in the court’s ruling inasmuch as the court held the lineup identification admissible despite defendant’s argument that the arresting officers lacked probable cause. That implicit finding, affirmed by the Appellate Division, is entitled to no less deference than an express finding (People v Bell, 63 NY2d 796, 797-798; People v Alfinito, 16 NY2d 181, 186), and perforce limits our review to the question whether there is sufficient evidence in the record to support a finding of probable cause (see, People v Bigelow, 66 NY2d 417, 420-421).
On a careful review of this record, we cannot say that the evidence before the court was insufficient as a matter of law to support the finding of probable cause. That the hearing testimony did not establish conclusively that the arresting officers knew the basis of Shermain Thompson’s knowledge is not fatal to a determination of probable cause. She was an average citizen who by happenstance was a witness able to *340 identify the alleged perpetrator of the crime, as indicated by the original police report in the case, and could relate what she knew to police as a matter of civic duty. As such, her information was properly accorded a high level of reliability, especially in view of the criminal sanctions attendant upon falsely reporting such information to the authorities (see, People v Moore, 32 NY2d 67, 71).
Defendant’s contention that the court’s charge regarding his failure to testify tended to ^undermine his privilege against self-incrimination is unpreserved for our review (see, People v Autry, 75 NY2d 836). Finally, defendant’s claim that the court curtailed, excessively, both at the hearing and at the trial, his direct and cross-examination of witnesses is without merit as are such of his remaining contentions as are preserved.
Accordingly, the order of the Appellate Division should be affirmed.

. Defendant who had selected number 2, was 24 years old, 5 feet 7 inches tall and weighed 130 pounds. All lineup participants were Black males with short black hair, similar to defendant’s.

. This argument has been abandoned and is not before us on this appeal.

. The People had stipulated that they would not introduce the defendant’s statements at trial.