OPINION OF THE COURT
Steven W. Fisher, J.
On this motion, the defendant seeks to preclude, or in the alternative to suppress, the potential identification testimony of the complaining witness. The defendant maintains that preclusion is warranted because the identification notice served upon him did not satisfy the requirements of CPL 710.30. In the alternative, he contends that suppression is required because the People failed to carry their burden of coming forward at the Wade hearing with evidence of the lawfulness of the pretrial identification procedures and because the lineup was shown to have been both unfair and violative of the defendant’s right to counsel.[1]
Based upon the testimony and documentary evidence offered at the Wade hearing, and upon court records, I find the facts to be as follows:
On April 30, 1989, Maureen Peters reported to the police that, in the early morning hours of that day, she had been *202 robbed of her purse on 26th Avenue between Union Street and Parsons Boulevard in Flushing, Queens. She said that she had just parked her car when an old, brown Toyota or Datsun sedan pulled alongside her. When the passenger unsuccessfully tried to grab her purse, she began to run. The driver got out of the vehicle, pursued her on foot, pushed her up against a parked car and took her purse. He then returned to his vehicle and drove away.
Ms. Peters described the driver as a male black, approximately 190 pounds, 5 feet 9 inches to 5 feet 10 inches tall, approximately 28 years old, with short hair, and wearing white sneakers, blue jeans and a dark jacket. She could describe the passenger only as a black male.
On May 1, 1989, Ms. Peters viewed photographs, first at her home and then at the 109th Precinct, without result. Later the same day, she went to the Queens Criminal Identification Unit at the 112th Precinct where she looked at drawers containing photographs of black men. She selected the photograph of the defendant, Troy Hilton.
At the Wade hearing, the People called Detective John O’Connell who had shown Ms. Peters the drawers of photographs at the Identification Unit. Detective O’Connell had absolutely no independent recollection of the circumstances surrounding Ms. Peter’s photographic identification. He did, however, produce a form which he filled out at the time reflecting Ms. Peter’s selection of the defendant’s photograph. Without objection, the form was received in evidence both as a business record and as evidence of past recollection recorded.
On May 2, 1989, the day after the photographic identification, Ms. Peters had a conversation with Police Officer Donald Henne of the 109th Precinct robbery identification program who had been assigned to the case. She recounted the incident for the officer and gave him a description of the driver. She told Henne that she had selected a photograph and was 90% certain that the man in the photograph was the individual who had taken her purse. She said that she would be able to make a definite identification if she saw a lineup. Thereafter, Officer Henne received the defendant’s photograph from the Identification Unit and ascertained his last known address.
On July 26, 1989, Officer Henne and his partner went to that address and saw the defendant emerge from the building. Because there were many people around, and because the *203 officers feared that an arrest on the spot would precipitate an incident, they decided to resort to a ruse. They approached the defendant, identified themselves, and told him that they believed he had witnessed an automobile accident in the area. They asked if he would be willing to come to the precinct to answer questions about the accident. The defendant replied that he would but that he was on his way to a meeting. When he agreed to come to the precinct later that evening, the officers let him go on his way.
The defendant in fact appeared at the precinct that night. He was told that he was to be arrested for a robbery and was to stand in a lineup. He replied by denying the commission of the crime.
Five "fillers” were recruited from a men’s shelter, and two officers went to pick up Ms. Peters. The defendant elected to hold number four in the lineup and to sit in an end seat. Ms. Peters viewed the lineup of six men and selected the defendant as the man who haid robbed her.
At his Criminal Court arraignment on July 27, 1989, the defendant was served, inter alia, with a complaint and with notice pursuant to CPL 710.30 (1) (b). The complaint was signed by Officer Henne who averred that the allegations were based upon information provided to him by Ms. Peters. The notice asserted that the People expected to elicit identification testimony from "a witness (witnesses) who has (have) previously identified the defendant” at a lineup on July 26, 1989 and "by photograph” on May 1,1989.
On August 23, 1989, the defendant was indicted for robbery in the third degree. He was arraigned on the indictment on September 7, 1989. At the arraignment, the People served a voluntary disclosure form, but did not re-serve CPL 710.30 notice.
At the Wade hearing, when the People chose not to call Ms. Peters, the defendant sought leave to do so even though defense counsel had never spoken with her. In response, I directed the People to provide defense counsel with telephone access to the complainant. The case was adjourned to a date on which counsel was to report as to whether telephone access had been afforded, and, if so, as to whether counsel still wished either to interview Ms. Peters in person or to call her as a witness. On the adjourned date, defense counsel an *204 nounced that she had had telephone contact with the complainant and would rest without calling her.[2]
The defendant’s preclusion claim rests on the assertion that the People failed to comply with CPL 710.30. Insofar as relevant here, that statute provides:
“1. Whenever the people intend to offer at a trial * * * (b) testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him as such, they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered.
“2. Such notice must be served within fifteen days after arraignment and before trial”.
Relying on People v Penasso (142 AD2d 691), the defendant argues first that the language of subdivision (2) of the statute should be read as limiting the time in which service of identification notice may be properly made to the 15-day period immediately following arraignment on the indictment. Because notice here was served at the defendant’s initial Criminal Court arraignment, well before arraignment on the indictment which had not yet been returned, the defendant maintains that the notice was ineffective. This argument is without merit.
In Penasso (supra), the defendants sought suppression of eavesdropping evidence on the ground that the People had failed to comply with the provisions of CPL 700.70. In language identical to that at issue here, CPL 700.70 requires preclusion of eavesdropping evidence unless the People furnish the defendant with a copy of the eavesdropping warrant and accompanying application “within fifteen days after arraignment”. The defendants argued that preclusion was required because the warrant and application had not been furnished within 15 days of their initial arraignments in Criminal Court. The Appellate Division rejected the contention, holding that the arraignment referred to in the statute was arraignment on the indictment, not the initial arraignment in Criminal Court (see also, People v Baris, 116 AD2d 174). The same interpretation has been given to the language *205 of CPL 710.30 (2) (see, e.g., People v Pamias, 139 Misc 2d 262 [Sup Ct, Kings County, Lipp, J.]).
Contrary to the defendant’s assertion, however, nothing in Penasso (supra) or related cases requires preclusion here. Those cases may be read to hold only that notice must be served no later than 15 days after arraignment on the indictment. They do not suggest that service may not be made earlier than arraignment on the indictment.
Our Court of Appeals has cautioned against any "interpretation of CPL 710.30 that places too much emphasis on the statute’s literal language when doing so would produce results plainly at odds with the policy of the legislation as a whole” (People v White, 73 NY2d 468, 474, n 1, cert denied — US —, 110 S Ct 170). That policy is to provide notice to a defendant that the People are in possession of the specified identification or statement evidence — a fact of which the defendant might otherwise be unaware — and to permit the orderly, swift and efficient determination of any challenge to the admissibility of that evidence (see, e.g., People v White, supra, at 474; People v O’Doherty, 70 NY2d 479, 488).
Although these policy considerations are undermined by late service of notice without good cause, they are, if anything, reinforced when notice is served on the very first occasion the defendant appears in court. The defendant will not be heard to complain that he received identification notice too soon.
The second prong of the defendant’s preclusion claim is that the notice he received was defective because it did not sufficiently "specify * * * the evidence intended to be offered” as required by the statute. Specifically, the defendant complains of the notice’s failure to provide the name of the identifying witness and the locations at which the identification procedures took place.
The statutory requirement that CPL 710.30 notice "specify * * * the evidence intended to be offered” has not been definitively interpreted. In People v Couch (74 AD2d 582), upon which the defendant relies, the People served the defendant with notice of their intent to offer evidence of an oral statement allegedly made by the defendant on a certain date at a specified time. No further information was provided. Finding the notice insufficient, the court held that "[u]nder the facts of this case, the District Attorney’s notice of intent should have included the substance of the alleged statement together with the circumstances under which it was made” (74 *206 AD2d, supra, at 583). The court reasoned that "[s]uch disclosure would have afforded the defendant a reasonable opportunity to investigate matters relating to the voluntariness of his purported statement and to prepare his defense accordingly” (supra, at 583).
Similarly, in People v Fort (109 Misc 2d 990 [Syracuse City Ct, Bersani, J.]), upon which the defendant also relies, the court found insufficient a "blank” identification notice which advised the defendant only that " 'the evidence will consist of testimony regarding an observation of the Defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him’ ”. The court wrote that identification notice "must contain, at a minimum, the name of the witness who made the previous identification, the time and place of the identification, and the manner in which the identification was conducted” (supra, at 994). The defendant acknowledges that People v Fort (supra) is not binding on this court.
In the case at bar, we are not dealing with a "blank” notice which informs a defendant of nothing more than that the People have evidence of a statement or of a prior identification. Here, the defendant was notified that there had been a photographic identification on May 1, 1989, and a lineup identification on July 26, 1989. Although no location or time of day was provided, it should be noted that, having participated in it, the defendant himself would be aware of the place and approximate time of the lineup.
The notice’s failure to name the identifying witness is, however, troubling. I express no view on what my ruling would be had there been more than one identifying witness, or had the identifying witness been someone other than the complainant (cf., People v Ocasio, 146 Misc 2d 688 [Sup Ct, Kings County, Lipp, J.] [permitting the People to amend CPL 710.30 notice to change the identifying witness named therein]). In this case, however, the notice was accompanied by the felony complaint which named Ms. Peters, and only Ms. Peters, as the source of the accusation against the defendant, and she has proved to be the sole identification witness against him.
The sufficiency of a notice containing incomplete or inexact information has been held to turn on whether the difference between the information provided and the evidence ultimately *207 adduced is such as to frustrate the defendant’s opportunity to fashion an appropriate defense (see, e.g., People v Ludolph, 63 AD2d 77, 81; People v Grandenetti, 139 Misc 2d 614, 615 [Sup Ct, NY County, Failla, J.]; cf., People v Couch, supra). There is no suggestion that that is so in the case at bar.
In my view, although the better practice is to name the identifying witness in the CPL 710.30 notice, the People’s failure to do so under the circumstances at bar need not result in preclusion.
The defendant’s suppression claim begins with the assertion that the People did not carry their burden of coming forward with evidence of the lawfulness of the identification procedures. He points out that there was no testimonial evidence of the circumstances surrounding the photographic viewings or of what was said to the complainant en route to the precinct or while she was waiting to view the lineup. The defendant argues that the complainant could have been subjected to police suggestiveness while viewing the photographs or while preparing to view the lineup, and that, by failing to offer evidence to exclude that possibility, the People failed to carry their burden of production. This argument is without merit.
The absence of suggestion at the photographic identification is circumstantially established by the fact that, prior to Ms. Peters’s selection of the defendant’s photograph, the police had no reason to believe or suspect that he, rather than any of the other men depicted in the drawers of photographs, was responsible for the crime. Moreover the intimation that police suggestion might have tainted the complainant’s photographic or corporeal identifications is purely speculative (see, People v Chipp, 75 NY2d 327, 335). And the defendant’s position is further undercut by the fact that defense counsel personally interviewed the complainant but chose not to call her at the hearing (cf., People v Chipp, supra).
The defendant next contends that, by securing his presence at the precinct by means of a ruse, the police "set up circumstances which were likely to dissuade the defendant from coming to the precinct with an attorney.”
The defendant concedes that, at the time of the lineup, he was not represented by an attorney and did not request one. Clearly, then, since the lineup was conducted before the filing of an accusatory instrument, the defendant’s right to counsel had not attached (see, e.g., People v Hawkins, 55 NY2d *208 474, 482-488), and the absence of an attorney at the procedure was without legal consequence. Moreover, I find that the ruse employed by the police, who had probable cause to arrest the defendant on the spot, was aimed, not at dissuading the defendant from securing the assistance of counsel, but at avoiding an incident on the street.
Finally, the defendant contends that the composition of the lineup was unfair. The photograph of the lineup does not support the claim. "There is no requirement * * * that a defendant in a lineup be surrounded by people nearly identical in appearance” (People v Chipp, supra, at 336; see also, People v Mason, 138 AD2d 411; People v Collins, 136 AD2d 720). In my view, any difference in appearance among the lineup participants here was not such as to create a substantial likelihood that the defendant would be singled out for identification.
Accordingly, for all the foregoing reasons, the defendant’s motion should be denied in all respects.

. The defendant agreed to proceed with the Wade hearing upon the understanding that he would not thereby waive his preclusion claim (cf., CPL 710.30 [3]).

. After the hearing, it was revealed that defense counsel had not only had telephone contact with the complainant but had interviewed her in person at her father’s home.