■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARTHUR HUCKS, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Kings County (Bianchi, J., at trial; Kreindler, J., at sentence), rendered January 3, 1989, convicting him of burglary in the second degree, criminal possession of stolen property in the fifth degree, and petit larceny, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Bianchi, J.), of those branches of the defendant's omnibus motion which were to suppress physical evidence, inculpatory statements, and identification testimony.

Ordered that the judgment is affirmed.

We find unpersuasive the defendant's contention that the hearing court erred in refusing to direct the People to produce two police officers and the complainant as additional witnesses at his pretrial suppression hearing. While the People have the initial burden of demonstrating that no improper police conduct occurred in obtaining the evidence sought to be suppressed, they are not required to produce each and every police officer with knowledge of the criminal incident and surrounding circumstances (see generally, People v Witherspoon, 66 NY2d 973). In the instant case, the testimony of the arresting officer demonstrated that the identification evidence,

statements and physical evidence were not procured through tainted police procedures. Moreover, the defendant's request for the production of the other officers who were at the scene was not supported by a "bona fide factual predicate which demonstrated that such officers possessed material evidence on the question" of whether the challenged evidence was lawfully obtained *(People v Witherspoon, supra,* at 974). Similarly, it is well settled that where, as here, the People have adequately demonstrated that the identification of the defendant was not the product of an unduly suggestive, police-arranged procedure, there is no need to demonstrate an independent source for the in-court identification by the complaining witness "[a]bsent some showing of impermissible suggestiveness" *(People v Chipp,* 75 NY2d 327, 335, *cert denied* — US —, 111 S Ct 99).* Inasmuch as the defendant failed to come forward with any evidence indicating that the identification resulted from illegal police conduct or unduly suggestive procedures, he was not entitled to the production of the complainant as a hearing witness *(see, e.g., People v Chipp, supra).* Accordingly, under the circumstances presented in this case, the hearing court did not improvidently exercise its discretion in rejecting the defendant's request for the production of these additional witnesses.

Insofar as the dissent relies upon the complainant's trial testimony to support its position that the court should have directed the production of additional witnesses at the pretrial suppression hearing, we note that we are precluded from reviewing trial testimony in determining whether the hearing court acted properly *(see, People v Riley,* 70 NY2d 523; *People v Dodt,* 61 NY2d 408; *People v Gonzalez,* 55 NY2d 720, *cert denied* 456 US 1010). Since the defendant's counsel did not seek to reopen the hearing based upon the testimony adduced at the trial, the issue is not properly before us. In any event, consideration of the complainant's trial testimony only serves to bolster the hearing court's determination. While there were some differences between the hearing testimony of the police officers and the trial testimony of the complainant with respect to the manner in which the identification occurred, these minor discrepancies were of no moment. Indeed, the complainant's trial testimony negated any possibility that her identification of the defendant resulted from an alleged suggestive procedure, as it demonstrated that the identification was based on her recognition of the defendant and was not influenced by his physical proximity to her stolen television set.

The defendant's remaining contentions have not been preserved for appellate review and, in any event, are without merit. Sullivan, J. P., Eiber and Balletta, JJ., concur.

Ritter, J., dissents, and votes to hold the appeal in abeyance and to remit to the matter to the Supreme Court, Kings County, to hear and report on the suppression issues, with the following memorandum, in which Miller, J., concurs. In his pretrial omnibus motion, the defendant moved to suppress a television set, statements he made to the police, and the complainant's identification testimony, claiming he had been a victim of illegal police conduct. Specifically, the defendant sought to prove at the suppression hearing that the television set was moved from his bathtub to a table readily seen through the open door to his apartment. He based this claim on information turned over as *Rosario* material and contained in a data analysis sheet prepared by an Assistant District Attorney which recorded a statement by an unidentified police officer that the television set had been found in the bathtub.

A total of four officers were involved in this investigation. Two testified at the suppression hearing and had no knowledge of a television set being found in the defendant's bathtub. The defendant sought to call the other two police witnesses. His applications were denied and the hearing court denied suppression.

The defendant was charged with burglarizing an apartment in the early afternoon on May 9, 1988. The complainant returned home at approximately 12:30 P.M. on that afternoon to find her apartment in disarray. When she discovered that her television and various other items were missing, she called 911 to report the burglary. While waiting for the police to arrive, she heard a noise and saw a man in the kitchen holding a remote control from her television set, and her son's stereo. When the complainant observed the man, he froze for a moment before fleeing through a window and down the fire escape. She then watched the man climb up a fire escape and into a second floor apartment of a building located across the courtyard from her building.

At the suppression hearing, the People called one witness, Police Officer Borrero. Officer Borrero testified that on May 9, 1988, he and his partner, Officer Dowling, responded to a radio transmission of a burglary in progress at the complainant's address. Upon their arrival, the complainant advised them that the perpetrator had escaped into the second floor apartment of the building located across the courtyard. Officer

Borrero and his partner, Officer Dowling, followed the path taken by the alleged perpetrator. When they reached the side yard of the building to which the suspected perpetrator had fled, a woman on the first floor opened her window and said that the people who had taken the property had proceeded up the fire escape. She also indicated that one of the people lived in the apartment upstairs.

The officers climbed up the fire escape to the apartment which the complainant had pointed out. Officer Borrero waited outside the apartment, on the fire escape, and radioed for back-up assistance. A short while later, Officer Borrero saw two fellow officers, Martinez and Trousdell, inside the apartment. Officer Borrero opened the window and told the other officers that they were not in the apartment that had been burglarized, but instead were in the apartment to which the suspected perpetrator had fled. Borrero saw Martinez and Trousdell exit the apartment. He and Officer Dowling then fetched the complainant, and took her to the second floor of the building.

Officer Borrero further testified that as he, his partner Officer Dowling, and the complainant approached the second floor, they saw the defendant standing in the hallway in front of the door to the apartment into which the suspected perpetrator had fled, arguing with Officers Martinez and Trousdell. According to Officer Borrero, the complainant immediately identified the defendant as the man who had burglarized her apartment. She also identified her television set, which Officer Borrero said was sitting on top of a kitchen table, visible from the hallway through the open front door of the apartment. Officer Borrero also testified that the defendant claimed the television set was his, but the complainant immediately produced a receipt with a matching serial number, whereupon the defendant was placed under arrest.

During cross-examination, Officer Borrero testified that Officers Martinez and Trousdell were still in the apartment and the defendant was standing in the doorway holding the door, as he and the complainant observed them from the stairway.

The only other witness to testify at the suppression hearing was Officer Martinez, who was called by the defendant. Officer Martinez testified that on May 9, 1988, at approximately one o'clock in the afternoon, he and his partner, Officer Trousdell, responding to a radio transmission, entered the defendant's building. As they did so, a woman came out of her apartment and informed them that someone was breaking into the

second floor apartment. Officer Martinez observed that the door of the second floor apartment was ajar, and the lock apparently had been tampered with. Martinez testified that he and Trousdell went inside the apartment and began looking around when Officer Borrero, who was on the fire escape, told them they were in the wrong apartment. They exited the apartment and according to Officer Martinez, closed the door behind them. They then waited in the hallway for the assigned officers (Borrero and Dowling) to come up the stairs.

According to Officer Martinez, while in the hallway, he and Officer Trousdell were approached by the defendant, who came up the stairs and loudly asked what they were doing. Officer Martinez told the defendant they thought his apartment may have been burglarized. Officer Martinez testified that the defendant then opened the apartment door and looked inside. Officer Martinez and his partner left sometime after Officer Borrero arrived with the complainant, but, curiously, he did not recall seeing the complainant identify the defendant or the television set.

After Officer Martinez testified at the suppression hearing, the defense counsel informed the court that he wanted to call Officer Dowling, Officer Trousdell, and the complainant as additional witnesses at the suppression hearing. Counsel stated that he wanted to call the additional police witnesses because he believed they would contradict Martinez's testimony that the door of the defendant's apartment had been closed by the police prior to the defendant's arrival. He argued that the additional witnesses would not be giving merely cumulative testimony because the two police witnesses who had testified at the hearing gave contradictory accounts of what happened at the defendant's apartment building, and it was therefore necessary to question the other officers who had been on the scene.

More importantly, the defense counsel also stated that he wanted to explore a statement contained in the data analysis form from the District Attorney's office indicating that the complainant's television set had been found in the defendant's bathtub. The recorded information came from an unidentified police source. Counsel argued that the statement supported the defense contention that the police had acted unlawfully by moving the television set from the bathtub to the kitchen table where it could be viewed from the hallway, and then intentionally left the door open. According to the defense counsel, this purportedly unlawful police conduct tainted all of the evidence the defendant was seeking to suppress, includ-

ing the complainant's identification at the scene. Additionally, the defense counsel contended that the police brought the complainant to the defendant's apartment and arranged a suggestive showup identification procedure by placing the television set next to where he was standing.

The hearing court concluded that the defense counsel's arguments were based on pure speculation, and denied the defendant's application to call additional witnesses. The court rejected defense counsel's contention that the police had engaged in unlawful conduct or that the police had arranged the on-the-scene identification. The court then denied the various branches of the defendant's omnibus motion which were to suppress the evidence against him.

Thereafter, at the trial, in contrast to the testimony by the police witnesses at the hearing, the complainant testified that the back-up team, Officers Martinez and Trousdell, were already downstairs when she arrived on the scene. She also stated that as she reached the top of the stairs she looked through an open door and saw the defendant standing inside the apartment. She immediately recognized him as the man who had burglarized her apartment and saw that the defendant was standing next to her television set.

Where it is alleged that statements or other evidence were obtained by the exploitation of unlawful police conduct, the hearing court should permit the defendant to delve fully into the circumstances surrounding his arrest or detention (see, People v Misuis, 47 NY2d 979, 981; People v Wise, 46 NY2d 321, 329). I recognize that the defendant does not have an absolute right of compulsory process at a pretrial suppression hearing. However, here the statement in the prosecution's data analysis form indicating that the television set had been observed in the bathtub, inside the defendant's apartment, served as a sufficient factual predicate to warrant further inquiry of other witnesses who had been at the scene. In my view, the defendant should not have been limited to the testimony of Officers Borrero and Martinez, which was contradictory in key areas, and was clearly inconsistent with the data analysis form, as each denied knowledge about the television set being found in the bathtub of the defendant's apartment. Since the question of whether the television set was found in the bathtub is relevant to the question of whether the police searched the apartment and moved the television set in violation of the defendant's constitutional rights, I conclude that the hearing court erred by precluding the defendant from calling the additional witnesses (cf., People

*v Ocasio,* 134 AD2d 293). The defendant's efforts to call the additional witnesses appears to have been made with a good faith belief that their testimony would be material to his claim that the police had engaged in unlawful conduct and had arranged the identification procedure at the defendant's apartment. This was not a transparent effort to engage in impermissible discovery, nor were there any other countervailing policy considerations that outweighed the defendant's right to call the additional witnesses *(see, People v Chipp,* 75 NY2d 327, *cert denied* — US —, 111 S Ct 99; *People v Petralia,* 62 NY2d 47, *cert denied* 469 US 852; CPL 60.15).

Accordingly, the defendant must be given an opportunity to call additional witnesses in support of his contentions that the evidence offered by the prosecution was tainted by the alleged unlawful police conduct, and that the complainant's identification was the product of a suggestive police arranged showup.