■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JEAN AZOR, Appellant. [979 NYS2d 573]—

Judgment, Supreme Court, Bronx County (Ann M. Donnelly, J.), rendered September 12, 2011, convicting defendant, after a nonjury trial, of two counts of attempted assault in the third degree, and sentencing him to concurrent terms of 45 days, affirmed.

According to their testimony at the *Wade* hearing, on February 3, 2010, two Rikers Island correction officers directed an inmate who was giving them a hard time to go into one of the "pens." At that point, defendant, who was in the "search pen," called out, "That's my Muslim brother," and forcefully pushed open the pen's gate, striking one of the officers with it. A physical altercation ensued, during which defendant repeatedly punched both officers.

One of the officers sounded his alarm and the probe team arrived almost immediately. Defendant was subdued, handcuffed and detained at the scene. No other inmates were involved in the altercation, which lasted approximately one minute. According to the trial testimony, once defendant was subdued he was taken into a bus to have his picture taken for the record.

On February 9, 2010 and March 11, 2010 respectively, the two officers that defendant punched identified him in separate photographic arrays. One of the officers testified that he had seen defendant on at least two occasions prior to the February 3rd incident, when logging defendant in and out for a court appearance. The other stated that he must have seen defendant before the incident, but that he "never had an interaction like that with him where he would stand out in my head." On March 23, 2010, defendant was formally charged by a criminal complaint.

Under these circumstances, the court properly denied defendant's motion to suppress the identification testimony because of the alleged suggestiveness of the photo array identification procedure. Since the officers were the victims of the assault and participated in subduing defendant at the scene during the face-to-face altercation, which did not involve any other inmates, the identifications were confirmatory in nature and there is no substantial likelihood of a misidentification or of an in-court identification influenced by the photographic array procedure. Although the concurrence is correct that defendant was not formally charged until approximately seven weeks after the incident, there was no intervening break between the offense and defendant's apprehension and detention, and as the court implicitly found, the identifications were supported by an independent source. Indeed, as the court observed, it was arguably

not even necessary to conduct an identification procedure since the victims of the alleged crimes took defendant into custody during the course of the underlying assault. This fact pattern differs fundamentally from one in which an individual commits a crime and a defendant, who is later arrested, is subsequently identified as that individual in a police-arranged procedure.

Defendant's claim that the evidence was legally insufficient is unpreserved (*see People v Gray*, 86 NY2d 10 [1995]) and we decline to review it in the interest of justice. As an alternative holding, we find that when the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could have found that defendant's guilt was proved beyond a reasonable doubt (*see People v Bleakley*, 69 NY2d 490 [1987]). Nor is the verdict against the weight of the evidence. To the extent defendant identifies discrepancies in the testimony of prosecution witnesses, they are relatively minor and the court was entitled to credit the officers' testimony over that of the defense witness (*id.* at 495).

Defendant's argument that the court violated his rights under the Confrontation Clause when it prohibited cross-examination of the correction officers about prior excessive force investigations conducted against them is unpreserved (*see People v Brown*, 254 AD2d 75 [1st Dept 1998], *lv denied* 92 NY2d 980 [1998]) and we decline to review it in the interest of justice. As an alternative holding, we find that defendant's contentions are without merit. The court properly allowed the defense to engage in good faith cross-examination of the officers regarding any specific allegation of excessive force, while prohibiting questioning regarding the fact that investigations were conducted that did not result in determinations of wrongdoing, or regarding civil settlements that established no specific link to misconduct by the officers. Concur—Tom, J.P., Andrias, Saxe and DeGrasse, JJ.

Richter, J., concurs in a separate memorandum as follows: I write separately because I would affirm the court's finding that the identification procedures were not suggestive. I agree with the majority's recitation of the facts surrounding defendant's alleged assault on the officers, and therefore need not repeat those facts here. However, the record does not establish what happened after defendant was handcuffed. Nor does it establish that an identification was made by either officer at that time. Officer Anthony testified that he immediately left the area after defendant was subdued, and Officer Peluso gave no testimony

about what occurred following the alleged assault.* Furthermore, defendant was not arrested until seven weeks later, and the arresting officer was not called as a witness at the suppression hearing. Nor did any members of the probe team who entered after the assault testify at the hearing. Thus, there was a significant period of time between the incident, the identification procedures and the arrest, and we must address the alleged suggestiveness of the photo arrays that were shown to the officers (*see e.g. People v Garner*, 71 AD3d 491 [1st Dept 2010], *lv denied* 14 NY3d 888 [2010]).

Although the motion court did not use the word "suggestiveness" in its decision, it is apparent that the court made a finding that the procedures used did not taint the in-court identifications. Neither the composition of the photo arrays nor the conduct of the officers overseeing the procedures created "a substantial likelihood that the defendant would be singled out for identification" (*People v Chipp*, 75 NY2d 327, 336 [1990], *cert denied* 498 US 833 [1990]). Although the background of defendant's photograph is slightly lighter than some of the other individuals in the array, Officer Anthony testified that the original array he viewed was "lighter" and Officer Peluso recalled his original array as being "clear." Nothing was said by the officer who administered the photo array that would have led the viewing officers to pick out defendant. Thus, the motion to suppress was properly denied.

---

* The majority impermissibly relies on trial testimony that defendant was taken onto a bus to have his picture taken after the incident. No such evidence was presented at the suppression hearing. Nor was there evidence at the hearing that any picture was shown to either of the victim officers on the day of the assault.