# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

850

KA 07-02436

PRESENT: SCUDDER, P.J., SMITH, CENTRA, FAHEY, AND PERADOTTO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

CHARLES K. WILSON, DEFENDANT-APPELLANT.

---

CHARLES T. NOCE, CONFLICT DEFENDER, ROCHESTER (KATHLEEN P. REARDON OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (ROBERT J. SHOEMAKER OF COUNSEL), FOR RESPONDENT.

---------------------------------------------------------------------------------------------------------------

Appeal from a judgment of the Supreme Court, Monroe County (Stephen R. Sirkin, A.J.), rendered September 17, 2007. The judgment convicted defendant, upon a jury verdict, of attempted murder in the second degree, robbery in the first degree (two counts), burglary in the first degree (three counts), assault in the first degree (two counts) and assault in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by reversing that part convicting defendant of attempted murder in the second degree and dismissing the ninth count of the amended indictment and by directing that the sentences on the remaining counts shall run concurrently with respect to each other and as modified the judgment is affirmed.

Memorandum: On appeal from a judgment convicting him following a jury trial of, inter alia, attempted murder in the second degree (Penal Law §§ 110.00, 125.25 [2]), arising from a home invasion, defendant contends that the attempted murder count was rendered duplicitous by the testimony at trial. We agree with defendant, as we agreed with his codefendant on a prior appeal, that the conviction of attempted murder in the second degree must be reversed because, based on the evidence presented at trial, " 'the jury may have convicted defendant of an unindicted [attempted murder], resulting in the usurpation by the prosecutor of the exclusive power of the [g]rand [j]ury to determine the charges' " (*People v Boykins*, 85 AD3d 1554, 1555, *lv denied* 17 NY3d 814). We reach this issue despite defendant's failure to preserve it (*see People v Lane*, 106 AD3d 1478, 1481, *lv denied* 21 NY3d 1043; *People v Filer*, 97 AD3d 1095, 1096, *lv denied* 19 NY3d 1025). We therefore modify the judgment by reversing that part convicting defendant of attempted murder in the second degree and dismissing the ninth count of the amended indictment. We further agree with defendant that the sentences imposed on the remaining

counts must run concurrently with respect to each other, and we therefore further modify the judgment accordingly (*see Boykins*, 85 AD3d at 1555).

Contrary to defendant's further contention, Supreme Court did not err in refusing to suppress identification evidence. " 'Multiple photo identification procedures are not inherently suggestive' " (*People v Dickerson*, 66 AD3d 1371, 1372, *lv denied* 13 NY3d 859). "While 'the inclusion of a single suspect's photograph in successive arrays is not a practice to be encouraged, it does not per se invalidate the identification procedures' " (*People v Beaty*, 89 AD3d 1414, 1415, *affd* 22 NY3d 918; *see Dickerson*, 66 AD3d at 1372). Here, although there was not a significant lapse of time between the presentation of the arrays (*see Beaty*, 89 AD3d at 1415; *cf. Dickerson*, 66 AD3d at 1372), the record establishes that different photographs of defendant were used, that the photographs of defendant appeared in a different location in each photo array (*see Dickerson*, 66 AD3d at 1372), and that the fillers were very similar in appearance to defendant (*see generally People v Chipp*, 75 NY2d 327, 336, *cert denied* 498 US 833). We also conclude that the court did not err in determining that defendant's statements to the police during a brief exchange, made by defendant after he refused to waive his *Miranda* rights, were voluntary and thus were admissible for impeachment purposes (*see People v Maerling*, 64 NY2d 134, 140; *People v Stephanski*, 286 AD2d 859, 860). Here, the People met their initial "burden at the *Huntley* hearing of establishing that defendant's . . . statements were not the product of 'improper police conduct' " (*People v Rapley* [appeal No. 1], 59 AD3d 927, 927, *lv denied* 12 NY3d 858), and "[d]efendant presented no bona fide factual predicate in support of his conclusory speculation that his statement[s were] coerced" (*id.* [internal quotation marks omitted]).

Contrary to defendant's further contention, the court did not abuse its discretion in denying his motion to sever his trial from that of his codefendant (*see People v Mahboubian*, 74 NY2d 174, 183). Where counts are properly joined pursuant to CPL 200.40 (1), a defendant may nevertheless seek severance for " 'good cause shown' " (*id.*). "Good cause . . . includes, but is not limited to, a finding that a defendant 'will be unduly prejudiced by a joint trial' " (*id.*, quoting CPL 200.40 [1]). "Upon such a finding of prejudice, the court may order counts to be tried separately, grant a severance of defendants or provide whatever other relief justice requires" (CPL 200.40 [1]). Here, defendant contends that, if he had testified at trial, he would have been prejudiced by the admission in evidence of a statement of his codefendant indicating that the codefendant had merely "heard" of defendant's involvement in this home invasion. We reject that contention, and we note that the statement is not incriminating and thus does not implicate *Bruton v United States* (391 US 123), wherein "the Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when his codefendant's incriminating confession is introduced at their joint trial, even if the jury is specifically instructed to consider the confession only against the codefendant" (*People v Eastman*, 85 NY2d 265, 271 n 2).

Defendant further contends that, if he had testified at trial, he and his codefendant would have been placed in antagonistic positions inasmuch as the codefendant would not have been bound by the court's *Sandoval* ruling in cross-examining defendant. Defendant is correct that the codefendant would not have been bound by the court's *Sandoval* ruling (*see People v McGee*, 68 NY2d 328, 333; *People v Padilla*, 181 AD2d 1051, 1052, *lv denied* 79 NY2d 1052). Nevertheless, inasmuch as both defendants were charged with principal and accomplice liability for the same crimes, both defendants noticed alibi defenses, and both defendants were familiar to the eyewitnesses prior to the shooting, we see no basis for concluding that defendants would have "antagonized" each other at trial. Had one defendant attacked the other, the "attacking" defendant essentially would have taken the position that the eyewitnesses correctly identified only the "other" defendant.

Viewing the evidence, the law and the circumstances of this case, in totality and as of the time of representation, we conclude that defendant received meaningful representation (*see generally People v Baldi*, 54 NY2d 137, 147). Defendant's contention that defense counsel was ineffective in failing to request a missing witness charge has no merit because there was no basis for such a charge (*see People v Hicks*, 110 AD3d 1488, 1489, *lv denied* 22 NY3d 1156), and an attorney's "failure to 'make a motion or argument that has little or no chance of success' " does not amount to ineffective assistance (*People v Caban*, 5 NY3d 143, 152, quoting *People v Stultz*, 2 NY3d 277, 287, *rearg denied* 3 NY3d 702). Viewing the evidence in light of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we also conclude that the verdict is not against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495). "[R]esolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the jury" (*People v Witherspoon*, 66 AD3d 1456, 1457, *lv denied* 13 NY3d 942 [internal quotation marks omitted]), and "the jury was entitled to reject certain portions of the victim's testimony while crediting other portions" (*People v McCray*, 96 AD3d 1480, 1480, *lv denied* 19 NY3d 1104). It cannot be said that the testimony of the eyewitnesses was " 'incredible and unbelievable, that is, impossible of belief because it [was] manifestly untrue, physically impossible, contrary to experience, or self-contradictory' " (*People v Mohamed*, 94 AD3d 1462, 1463-1464, *lv denied* 19 NY3d 999, *reconsideration denied* 20 NY3d 934).

Finally, we have reviewed defendant's remaining contention, and we conclude that it has been rendered academic as a result of our decision herein.

Entered: September 26, 2014                    Frances E. Cafarell
                                               Clerk of the Court