| |
|---|
| **People v Perez** |
| 2023 NY Slip Op 34680(U) |
| January 23, 2023 |
| Supreme Court, Westchester County |
| Docket Number: Indictment No. 70539-21 |
| Judge: James A. McCarty |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT, STATE OF NEW YORK
COUNTY OF WESTCHESTER
------------------------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

        -against-

REINALDO PEREZ,
               Defendant.
------------------------------------------------------------------X
McCARTY, AJSC

<u>DECISION & ORDER</u>
Indictment No.: 70539 -21 /617-21

The defendant, Reinaldo Perez, is charged under the within indictment with two counts of Assault in the first degree and one count of Criminal Possession of a Weapon in the third degree. By Decision and Order, dated January 13, 2022, this court (Prisco, JCC) ordered that pre-trial *Mapp/ Dunaway* and *Wade* hearings be conducted. This Court commenced the hearings on January 17, 2023 and completed same on January 19, 2023.

For purposes of this hearing, the People called Police Officer Chavez and Detective Hadjtelianos of the Ossining Police Department and admitted into evidence footage of the body camera worn by P.O. Chavez and the original photographic array at issue. Throughout the hearing, this Court had the unique opportunity to observe the witnesses' demeanor, to hear their testimony and to evaluate their credibility. Having found that the witnesses testified credibly in all respects, and upon the record adduced, this Court makes the following findings of fact and reaches the following conclusions of law.

**FILED**

*FINDINGS OF FACT*

JAN 2 3 2023

Police Officer Chavez has served the Ossining Police Department for approximately 8 years. On July 21, 2021 at approximately 7:40 pm he was assigned to administer a photographic array to the alleged victim, Matthew Johnson, at the Westchester Medical Center. P.O. Chavez testified that at the time he was given this assignment he was unaware of the circumstances that rendered the array necessary and, in addition, did not know the identity of the suspected perpetrator. P.O. Chavez testified that his entire interaction with the alleged victim was captured on his body camera. The footage of the event, which was admitted into evidence at this hearing, reveals that upon meeting the alleged victim P.O. Chavez explained to him that he would be showing him a photographic containing 6 photographs and that "the perpetrator may or may not be among" those pictured. Further, P.O. Chavez advised that the complexions of the individuals depicted in the array could be lighter or darker than they appear in the photographs and that the alleged victim should ignore any differences in the backgrounds of the photographs in the array. P.O. Chavez informed the alleged victim, in substance, that upon being shown the array he would be asked to look at each photograph and, if he recognized anyone, to say who and from where he recognized that individual and to circle the photograph and write his initials next to it. P.O. Chavez then provided an array to the witness for his viewing.

1

[* 1]

Within seconds, the alleged victim stated: "this is the dude", and identified the defendant, whose photograph was in position five (5) of the array, as the individual who "slashed [him] with the machete and jumped in the bushes". The alleged victim indicated he was "a hundred percent confident" in his identification. As he was requested to do, the alleged victim circled the defendant's photograph and initialized and signed the array.

The photographic array shown to the alleged victim was preserved and admitted into evidence for purposes of this hearing. Each of the individuals depicted in the array appears to be a male. Each is a light skinned, adult and each appears to be of Hispanic origin. Each has short, dark hair and each has a moustache and beard.

Detective Armstrong, another member of the Ossining Police Department, was also called to testify at this hearing. He testified that the defendant was arrested subsequent to having been identified by the victim as the perpetrator of the attack upon him. According to Det. Armstrong, at the time of his arrest, the defendant was wearing the sneakers which form the basis of the within suppression application. Det. Armstrong testified the defendant's sneakers were taken to negate the hazard which would have existed by permitting the defendant to have access to shoelaces in a jail cell, because they appeared similar in appearance to sneakers the perpetrator wore during the attack upon the alleged victim, and in case they were determined to bear relevant DNA evidence.

Upon the facts adduced at the hearing, the People submit there is no basis to suppress either the identification of the defendant or the sneakers recovered from him. The defense asserts the identification procedure requires suppression on grounds that it was unduly suggestive to the extent the photograph of the defendant was easily distinguishable from the others in the array to the extent his complexion is lighter, his eyebrows are fuller, and his hairline is different than that of the fillers. Further, the defense asserts the identification requires suppression on grounds that the photographs from which the array was constituted were not maintained. Finally, the defense submits the sneakers recovered from the defendant must be suppressed on grounds that there was insufficient probable cause to support the defendant's arrest.

## CONCLUSIONS OF LAW

With regard to the Wade aspect of the within motion, it is well settled that a suggestive or otherwise improper identification procedure violates due process and is not admissible to determine the guilt or innocence of a defendant (*U.S. v. Wade*, 388 US 218). At this hearing, the People bore the burden to establish the reasonableness of the police conduct and the lack of any undue suggestiveness in the pre-trial identification procedure (*see, People v. Chipp*, 75 NY2d 327 [1990]). The burden then shifted to the defense to establish, by a preponderance of the evidence, that the identification procedure employed was impermissibly suggestive and conducive to an irreparably mistaken identification (*Id.*). The People met their burden. Defendant did not.

Under the totality of the circumstances, the photographic array at issue was not so "impermissibly suggestive as to give rise to a substantial likelihood of misidentification" (*see, Neil v. Biggers*, 409 US 188 [1972]; *and see, People v. Ragunauth*, 24 AD3d 472 [2005], lv. denied 6 NY3d 779 [2006]. Signficantly, the law does not require that a defendant be surrounded be people nearly identical in appearance to him (*Chipp*, 75 NY2d at 336). The

2

photographic display at issue consisted of the defendant and five fillers. Each appears to be a light-skinned, adult, male, of Hispanic ethnicity. Each has short, dark hair, a moustache and beard, and dark eyebrows. The fillers bear a sufficient likeness to the defendant in age, facial features, and general appearance to the defendant such that that there existed little, if any, likelihood that the defendant would be singled out based upon any particular characteristics (cf., People v. Dowling, 207 Ad3d 799 [3d Dept. 2022]; see also, People v. Flores, 102 AD3d 707 [2d Dept. 2013]; People v. Avent, 29 AD3d 601 [2d Dept. 2006], appeal denied, 9 NY3d 1004 [2007]; People v. Henderson, 170 AD2d 532 [2d Dept. 1991]). Despite counsel's claims to the contrary, neither the defendant's skin tone nor eyebrows were so distinctive as to draw the viewer's attention to his photograph.

Of import, the traditional, still photographic display was administered by an officer who did not participate in compiling the array and who was not otherwise involved in the investigation; thus, as legally required, it was "double blinded" and there is no evidence that the defendant's identity was implied to the witness verbally or otherwise (see, CPL §60.25). The defense contention, that all additional photographs law enforcement reviewed but did not include in the array were required to be preserved, lacks legal merit (cf., People v. Holley, 26 NY3d 514 [2015])(requiring the People to preserve a record of what was viewed).

Consequently, this court finds the People have met their minimal burden of showing that the identification procedure was not unduly suggestive (People v Ortiz, 90 NY2d 533 [1997]; People v Chipp, 75 NY2d 327). Moreover, this court finds the defendant has failed to provide proof, by a preponderance of the evidence, that the identification procedures at issue was unduly suggestive and conducive to an irreparably mistaken identification. Consequently, this Court need not reach a determination as to whether an independent basis exists for the witness to make an in-court identification of the defendant (see, Chipp, 75 NY2d at 335).

As to the Dunaway/Mapp portion of this hearing, the People bore the burden of setting forth credible evidence tending to show that law enforcement officers acted lawfully while the defense bears the burden of proving, by a preponderance of the evidence, that the actions of law enforcement were illegal. The People have met their burden.

The People set forth sufficient evidence that the police had probable cause to arrest the defendant. The evidence adduced at the hearing demonstrated that, prior to the arrest of the defendant having been effectuated, the alleged victim identified him as the individual who "slashed" him with a machete. Moreover, the police had viewed video surveillance of the assault. Defendant was wearing the sneakers at issue at the time of his arrest. The law is well settled that it is lawful to search a person incident to arrest and that "once a person has been placed in custody, his expectation of privacy has been compromised and subsequent examination and testing of items seized at the time of the arrest is permissible as a lesser-related intrusion incident to the arrest already effectuated" (People v. Payne, 223 AD2d 787 [1996]; People v. Perel, 34 NY2d 462 [1974]). Here, where there was probable cause to arrest the defendant, there was probably cause for the seizure of the sneakers he was wearing which were in plain view (see, Id.).

Accordingly, and based upon the foregoing, the defendant's motions, to suppress the alleged victim's prospective identification testimony and the physical evidence seized from his

[* 3]

person, are denied.

The foregoing constitutes the opinion, decision and order of the court,

Dated: White Plains, New York
January 23, 2023

HON. JAMES A. McCARTY, AJSC

Hon. J. McCarty

MIRIAM E. ROCAH
Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Boulevard
White Plains, New York 10601
Attention:      ADA Jonathan Strongin

DANIEL HARNICK, ESQ.
Attorney for Defendant
345 Bronx River Road, Apartment 4D
Yonkers, New York 10704

CLERK OF THE COURT

4

[* 4]