This opinion is uncorrected and subject to revision before
publication in the New York Reports.
--------------------------------------------------------------

No. 196
The People &c.,
            Respondent,
        v.
Todd Holley,
            Appellant.



            Andrew C. Fine, for appellant.
            Joshua L. Haber, for respondent.



FAHEY, J.:

        When using a photo array as an identification
procedure, the People should preserve a record of what was
viewed.  Failure to do so gives rise to a rebuttable presumption
that the array was unduly suggestive.  The obligation to preserve
is not diminished by the type of system used.  Computer screen or

- 1 -

mugshots book, the People's obligation is the same.  Here, the People failed to preserve a computer-generated array of photographs shown to an identifying witness, giving rise to a rebuttable presumption that the array was unduly suggestive.  Nevertheless, in the present case, the People overcame that presumption through testimony at the suppression hearing.

I.

On May 30, 2010, two young women, Ju Eun Lee and Yoori Han, were on a subway platform in Manhattan when a man attempted to lift the strap of Lee's purse from her shoulder.  Lee clung to the bag, while Han seized the strap, engaging in a brief tug of war with the would-be robber.  Both women saw the man's face at close range on a well-lit platform.  The man let go of the purse and left the scene.  A bystander, Sylvie Lee, was one of several people who came to the assistance of the two women and escorted them as they went to report the incident to an MTA employee.  Meanwhile, the same man reentered the subway station, and, after making eye contact with Han, charged at the women.  He repeatedly punched and kicked Han and punched Sylvie Lee, before fleeing.

Detective Greg Mazuroski of the New York City Police Department's Manhattan Transit Robbery Squad was assigned to the case.  The detective interviewed the women.  Han and Ju Eun Lee described the perpetrator as a "skinny" black man, around 30 to 40 years old, about six feet to six feet, two inches tall, and weighing between 160 and 180 pounds.  Sylvie Lee described the

man similarly.[1]

On June 2, 2010, Detective Mazuroski invited Sylvie Lee to view a series of photograph arrays generated by the Police Department's photo manager system, a computer database that contains the photographs of individuals who have previously been arrested. The system generates arrays of six photographs at a time, based on criteria entered into the computer by the detective or officer, including the physical appearance of the suspect. The photographs are displayed on a computer screen.

In accordance with the witnesses' descriptions, Detective Mazuroski ran a search for black men, 30 to 40 years old, six feet to six feet, four inches, who had been arrested in Manhattan from 2007 to 2010. The search generated a large number of photographs, but Lee identified defendant Todd Holley as the attacker on the second "page" or photo array. She was then shown more pages -- at least 12 and perhaps as many as 20 more -- over the course of an hour or so. Lee also identified defendant as the perpetrator in two additional, different photographs, included on pages 13 and 14. She did not identify anyone else.

The police located defendant and arrested him on June 8. He was an African-American man, 32 years old, about six feet, one inch to six feet, two inches tall, and approximately 160 pounds in weight. That day, Han and Sylvie Lee separately viewed

---

[1]     It is not clear from the record at the suppression hearing whether Sylvie Lee described him as thin.

a lineup, comprising defendant and five other black men.  The fillers, according to their self-descriptions, ranged from 22 to 57 years of age, from five feet, nine inches to six feet, two inches, and from 180 to 250 pounds.  They wore identical baseball caps, turned backwards.  The men were seated.  Following a request by Han, the men stood up momentarily to show their profiles.  Both women identified defendant as the assailant.

## II.

Defendant was charged with one count of attempted robbery in the third degree and two counts of assault in the third degree.  At a suppression hearing, Detective Mazuroski described the procedures he had followed with the photo manager system as well as the lineup.  Detective Mazuroski testified that at the time he showed Sylvie Lee the photo arrays, he did not have a suspect in mind.  Cross-examination disclosed that the detective had not included a weight range when he entered criteria in the photo manager system, even though it would have been possible to enter a weight.  Significantly, the police had not preserved the photo arrays that were shown to Sylvie Lee for the hearing court to review.  Photographs of the lineup were entered into evidence.

Defendant moved to suppress all identification testimony.  He contended that the People's failure to preserve the photo arrays entitled him to a presumption of suggestiveness, and that, in any case, the procedure using the photo manager

system was unduly suggestive, insofar as the detective did not enter the perpetrator's estimated weight. He also challenged the lineup as unduly suggestive. Supreme Court, crediting the detective's testimony and finding neither pretrial identification procedure unduly suggestive, denied the motion.

Prior to defendant's trial, the parties discussed with the court whether testimony should be elicited from Detective Mazuroski concerning how the police came to arrest defendant. Supreme Court ruled that the People could elicit from the detective only that an investigation based on information beyond the witnesses' descriptions had led him to suspect defendant. The defense objected, primarily on the ground that such testimony would constitute improper bolstering of the eyewitness identifications.

At trial, Ju Eun Lee, Han, and Sylvie Lee identified defendant in court as the assailant, and the lineup identifications were described in detail. There was no testimony regarding the display of the photo arrays, but the detective testified that, after getting descriptions of the perpetrator from the witnesses, he had carried out "further investigation with information beyond the descriptions," which "generated one suspect," namely Holley. Defendant did not testify.

In summation, the prosecutor alluded to Detective Mazuroski's "further investigation," and told the jury that the detective "didn't go out and just grab the man off the street

that he thought looked like what [the witnesses'] description was.  He went after his investigation and went and found Mr. Holley."  No objection was made to these remarks.

The jury found defendant guilty on all counts. Defendant appealed from the judgment of conviction and sentence, challenging Supreme Court's ruling on the suppression motion, as well as the admission of the testimony regarding the detective's investigation and the prosecutor's remarks concerning the investigation in summation.

The Appellate Division affirmed, holding that the use of the photo manager system procedure was not unduly suggestive.

> "The detective's testimony about how the computerized procedure operates sufficiently established its fairness.  The fact that the police failed to preserve the arrays viewed by the witness does not warrant a different conclusion.  We also conclude that the detective entered sufficient information about the description of the perpetrator to ensure that the computer generated a fair selection of photos."  (116 AD3d 442 [1st Dept 2014] [citations omitted].)

The Appellate Division also upheld the lineup, noting that "[a]ny differences between defendant and the other participants, including an age disparity not fully reflected in the participants' actual appearances, and a weight disparity that was minimized by having the participants seated, was not so noticeable as to single defendant out" (id. at 442-443 [citations omitted]).  The court rejected defendant's remaining arguments.

A Judge of this Court granted defendant leave to appeal

(23 NY3d 1037 [2014]).  We now affirm.

                              III.

          The New York City Police Department's photo manager
system, described above, is today's computer-generated equivalent
of a long-established police procedure: showing a compilation of
photographs of previous arrestees, in the form of a "mug book"
(People v Burts, 78 NY2d 20, 22 [1991]) or a "drawer[] of
photographs" (People v Hernandez, 70 NY2d 833, 834 [1987]), to
people who witnessed a crime, in order to establish a suspect.
The primary question on this appeal is what the consequence
should be when the police use such a computer-generated photo
array, and fail to preserve a record of the particular
photographs shown to the witness.

          Review of whether a pretrial identification procedure
is unduly suggestive is subject to a well-established
burden-shifting mechanism.  Initially, the People have the burden
of producing evidence in support of the fairness of the
identification procedure.  If this burden is not sustained, a
peremptory ruling against the People is justified.  If the People
meet their burden of production, the burden shifts to the
defendant to persuade the hearing court that the procedure was
improper.  In other words, "[w]hile the People have the initial
burden of going forward to establish . . . the lack of any undue
suggestiveness in a pretrial identification procedure, it is the
defendant who bears the ultimate burden of proving that the

procedure was unduly suggestive" (People v Chipp, 75 NY2d 327,
335 [1990], cert denied 498 US 833 [1990]; see also People v
Jones, 2 NY3d 235, 244 [2004]; People v Ortiz, 90 NY2d 533, 537
[1997]).

Under Appellate Division case law, "the failure of the
police to preserve a photographic array [shown to an identifying
witness] gives rise to a rebuttable presumption that the array
was suggestive" (People v Quinones, 228 AD2d 796, 796-797 [3d
Dept 1996]; see also e.g. People v Reaves, 112 AD3d 746, 747 [2d
Dept 2013], lv denied 22 NY3d 1202 [2014]; People v Green, 188
AD2d 385, 386 [1st Dept 1992], lv denied 81 NY2d 840 [1993];
People v Simmons, 158 AD2d 950, 950 [4th Dept 1990], lv denied 76
NY2d 743 [1990]).  The rebuttable presumption fits within the
burden-shifting mechanism in the following manner.  Failure to
preserve a photo array creates a rebuttable presumption that the
People have failed "to meet their burden of going forward to
establish the lack of suggestiveness" (People v Patterson, 306
AD2d 14, 14-15 [1st Dept 2003], lv denied 1 NY3d 541 [2003]; see
Chipp, 75 NY2d at 335).  To the extent the People are silent
about the nature of the photo array, they have not met their
burden of production.  On the other hand, the People may rebut
the presumption by means of testimony "detailing the procedures
used to safeguard against suggestiveness" (People v Campos, 197
AD2d 366, 367 [1st Dept 1993], lv denied 82 NY2d 892 [1993]), in
which case they have met their burden, and the burden shifts to

the defendant.  Although we have not expressly adopted this presumption of suggestiveness before, we endorse it now.

Recently, the presumption of suggestiveness has been applied to photo arrays displayed to witnesses via the New York City Police Department's photo manager system.  In People v Dobbins (112 AD3d 735 [2d Dept 2013]), the Appellate Division applied the presumption to the prosecution's failure to preserve a printout or other record of an array generated by the photo manager system.  The Appellate Division held that the evidence presented by the People did not overcome the presumption that the array was suggestive, where

> "[a]t the suppression hearing, a detective
> testified that he did not memorialize and
> could not recall the specific information
> that he entered into the photo manager system
> which generated the photographic array, did
> not memorialize and could not recall how many
> photographs the complainant viewed, and did
> not memorialize and could not recall for how
> long the complainant was viewing photographs"
> (id. at 736).

Similarly, in People v Robinson (123 AD3d 1062 [2d Dept 2014]), the Appellate Division applied the presumption of suggestiveness, in light of the People's failure to preserve photographs, shown to two robbery victims on "the police department's photo manager system, which generated screens of six photographs at a time based on criteria entered into the computer by the detective" (id. at 1062).  The Robinson court held that the People failed to rebut the presumption in that "[t]he detective gave inconsistent testimony regarding what age criteria

he entered in the computer system to generate each photo array," and "did not recall how many screens either complainant viewed before each of them recognized the defendant, or how long it took each to make an identification" (id. at 1063).

Citing such cases, defendant argues that the denial of his suppression motion was reversible error and seeks a new trial, to be preceded by an independent source hearing. He contends that it is proper to extend the presumption of suggestiveness to the People's failure to preserve a record of photo arrays displayed to a witness by means of the photo manager system or a similar system, and that the People failed to rebut the presumption in his case. We agree with defendant on the first point but not the second.

IV.

The law requiring that the prosecution preserve a photo array shown to an identifying witness was first applied to physical books and drawers of photographs, but there is nothing about the requirement that would limit it to that context. A detective who shows an identifying witness a book of photographs must preserve the photographs that were shown, together with their arrangement in the book, and must keep some record of the order in which the pages were displayed. Similarly, a detective who shows a witness photographs on the photo manager system or via a similar computer-assisted process must carry out whatever steps are necessary to ensure that he or she can recreate in some

way during a suppression hearing the display of the photographs in the precise arrangement and order in which they were shown to the witness.

The People argue that the requirement of preservation, when applied to computer-generated photo arrays, amounts to the creation of an obligation on the part of the police to produce evidence in the first place.  While it is true that "[t]here is a difference between preserving evidence already within the possession of the prosecution and the entirely distinct obligation of affirmatively obtaining evidence for the benefit of a criminal defendant" (People v Hayes, 17 NY3d 46, 51 [2011], cert denied 132 S Ct 844 [2011]), the preservation of a photo array, whether physical or computer-generated, falls squarely within the first category.  A detective who shows a book or drawer of mugshots to an identifying witness must not only preserve the photographs but also create some record that will enable him or her to testify about the arrangement and order in which the photographs were shown to the witness.  Similarly, a detective who shows a witness photographs on a computer screen must keep some record of the arrays and the order in which they were displayed.  This is not creating evidence for the benefit of the defendant, but preserving evidence as required by the law protecting the defendant's right to a fair trial.

The People suggest that "if a witness viewed hundreds of photos before making an identification, all of the photos

would surely have to be saved and printed.  No matter what system would be involved, imposing such a requirement would surely be burdensome."  Defendant, by contrast, contends that computer-generated photo arrays are easily stored and printed.  We do not decide, on this appeal, whether preserving photo arrays shown to a witness on a computer screen by means of the photo manager system or the like would require printing the arrays.  That would depend on whether technology exists to allow, in some other way, the accurate recreation, at a hearing, of the display of photographs on a computer screen.  We are not persuaded that the advent of the photo manager system makes it more difficult, rather than less, to manage and reproduce photo arrays.  Consequently, we extend the presumption of suggestiveness to computer-generated photo arrays.

V.

In the present case, however, the People have rebutted the presumption of suggestiveness.  At the outset, we note that whether a photo array is unduly suggestive is a mixed question of law and fact and our review is limited to whether there is support in the record for the finding (see People v Sanchez, 21 NY3d 216, 225 [2013]).

Appellate Division cases have found that the People overcame the presumption when the detective's testimony detailed "the sheer volume of the photographs viewed, as well as the fact that the police had not yet focused upon defendant as a

particular suspect" (Campos, 197 AD2d at 367 [internal quotation marks omitted]; see also People v Mason, 138 AD2d 411, 412 [2d Dept 1988], lv denied 72 NY2d 863 [1988]; People v Jerome, 111 AD2d 874 [2d Dept 1985], lv denied 66 NY2d 764 [1985]).  In People v Jerome, for example, the witness "was shown approximately 1,000 photographs over a period of two days, resulting in his identification of defendant," and this occurred "at a point in the investigation where the police had not yet focused upon any particular suspect" (Jerome, 111 AD2d at 874). Here, Detective Mazuroski testified that he did not consider defendant a suspect before showing Sylvie Lee the photographs from the photo manager system.  Moreover, Lee viewed about a hundred photographs, and identified defendant, and only defendant, consistently.  We conclude that there is support in the record for the finding that the People met their initial burden of producing evidence of the lack of any undue suggestiveness.

        We also conclude that there is record support for the finding that defendant did not meet his ultimate burden of proving that the procedure was unduly suggestive.  In particular, there is support for the Appellate Division's finding that Detective Mazuroski entered enough information about the perpetrator's physical features to ensure that the photo manager system would generate "a fair selection of photos" (116 AD3d at 442), rather than an array in which defendant's image would stand

out as markedly different.

                              VI.

          With respect to the lineup, defendant argues that he
was the only person in the lineup who met the age and weight
description given by the witnesses.  Whether or not a lineup is
unduly suggestive is a mixed question of law and fact (see People
v McBride, 14 NY3d 440, 448 [2010], cert denied 562 US 931
[2010]; People v Jackson, 98 NY2d 555, 559 [2002]).  Here, there
is support in the record for the Appellate Division's
determination that the disparity in age was not so apparent as to
draw attention to defendant.  "[A] numerical age difference"
existing "between a defendant and the fillers in a lineup,
without more, is not sufficient to create a substantial
likelihood that the defendant would be singled out for
identification" (Jackson, 98 NY2d at 558, 564 [internal quotation
marks omitted]; see generally Chipp, 75 NY2d at 336).  There is
also record support for the Appellate Division's determination
that the disparity in weight was minimized (see generally
McBride, 14 NY3d at 448; People v Cook, 254 AD2d 92, 92 [1st Dept
1998], lv denied 93 NY2d 851 [1999]).

          Defendant's remaining contentions lack merit or are
unpreserved.  In particular, the detective's testimony regarding
the conduct of his investigation after he obtained descriptions
from the witnesses "did not state or imply that anyone made an
identification" (People v Tucker, 25 AD3d 419, 420 [1st Dept

2006], <u>lv denied</u> 6 NY3d 839 [2006]; <u>cf.</u> <u>People v Holt</u>, 67 NY2d 819, 821 [1986]).  The testimony therefore did not violate the evidentiary rule that "[i]n the context of eyewitness identification, the testimony of a third party (typically, a police officer) to the effect that the witness identified a defendant as the perpetrator on some prior occasion is generally inadmissible" (<u>People v Buie</u>, 86 NY2d 501, 510 [1995], citing <u>People v Trowbridge</u>, 305 NY 471 [1953]).  Defendant's similar challenge to the prosecutor's summation is unpreserved (<u>see generally</u> <u>People v Romero</u>, 7 NY3d 911, 912 [2006]).

Accordingly, the order of the Appellate Division should be affirmed.

People of the State of New York v Todd Holley

No. 196

ABDUS-SALAAM, J. (concurring):

I agree with the majority that the People carried their burden of production at the Wade hearing in this case and that defendant failed to meet his burden to demonstrate that the police-arranged photo identification procedure was unduly suggestive (see majority op. at 13-14; see also People v Chipp,

- 1 -

75 NY2d 327, 335 [1990]).  Furthermore, I concur in the majority's rejection of defendant's challenges to the nisi prius court's admission into evidence of the lineup identification, the in-court identification testimony and Detective Mazuroski's brief testimony about his investigation in this case (see majority op. at 14-15).  Nonetheless, I write separately to explain my disagreement with the majority's adoption of a "presumption of suggestiveness" that allegedly arises whenever the People fail to present at a Wade hearing a physical copy of a photo array that has previously been shown to an identifying witness (see majority op. at 1-2, 7-12).  In my view, the presumption lacks a solid legal foundation and risks creating unnecessary confusion about the proper application of existing legal standards governing a suppression hearing.

As the majority recognizes, we have never previously held that, where the People fail to produce a copy of a photo array at a Wade hearing, they must overcome a rebuttable presumption that the disputed photo array identification procedure was unduly suggestive (see majority op. at 9).  Rather, under our existing precedent, the People must meet only their "initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness" (Chipp, 75 NY2d at 335), which is a "minimal" burden of "production" (People v Ortiz, 90 NY2d 533, 538 [1997]), and once that requirement is satisfied, the burden shifts to the defendant

to "prov[e] that the procedure was unduly suggestive" (Chipp, 75 NY2d at 335). Because this framework sets forth a commonsense decisional process without any presumptions, it promotes clarity and fairness by employing two distinct and balanced burdens with a single shifting point between them.

By contrast, the presumption of suggestiveness, which the majority derives from certain Appellate Division decisions, undermines the clarity of our existing suppression framework. As envisioned by the majority, the presumption does not alter the burden of production per se, but instead adds a turning point within the People's efforts to meet that burden by requiring them to overcome the presumption with testimony about the composition of the photo array and the circumstances surrounding the identification procedure (see majority op. at 8). Thus, the presumption seems to require a court to take an additional analytical step, evaluating first whether the People's proof overcomes the presumption, then whether the evidence satisfies the burden of production and finally whether the defendant has demonstrated the unlawfulness of the contested photo array identification procedure.

In the vast majority of cases, a balanced application of this three-step process presumably would yield the same result as the more straightforward two-step process which exists now. Indeed, under the existing suppression framework, the People can meet their burden of production using sufficiently detailed

testimony about the photo array identification procedure without producing a physical copy of the array at the hearing (see People v Hernandez, 70 NY2d 833, 835 [1987]), and the majority's decision indicates that they can similarly overcome the presumption of suggestiveness and simultaneously meet their burden of production by presenting that same type of testimony (see majority op. at 12-13). But by adding an extra layer to the analysis, the presumption may cause some courts in practice to lose sight of the basic point that the People's burden remains a minimal one geared toward production rather than ultimate persuasion and conclusive proof.

Even if the presumption did not engender confusion or result in any significant practical alteration of our traditional suppression analysis, I would not endorse it because of its dubious legal roots. Significantly, the Appellate Division case law adopting the presumption relies on earlier decisions that do not mention a presumption of suggestiveness at all, instead merely encouraging the production of photo arrays at Wade hearings and explaining that the lack of such production, coupled with the absence of additional evidence, prevents the People from meeting their burden (see People v Barber, 96 AD2d 1112, 1112-1113 [3d Dept 1983]; People v Nelson, 79 AD2d 171, 173-174 [4th Dept 1981]; People v Foti, 83 AD2d 641, 641-642 [2d Dept 1981]; People v Putman, 55 AD2d 608, 608-609 [2d Dept 1976]). Unfortunately, in later cases, the Appellate Division cited those

decisions for a novel proposition that they did not support, namely that a rebuttable "inference of suggestiveness" arises from the People's failure to produce the photo array at the suppression hearing (see People v Johnson, 106 AD2d 469, 469 [2d Dept 1984]).  Indeed, the initial Appellate Division case law adopting the presumption of suggestiveness did so with little, if any, explanation of the rationale for such a presumption (see id.; see also People v Simmons, 158 AD2d 950, 950 [4th Dept 1990]).

Furthermore, until recently, the Appellate Division had concluded that the presumption of suggestiveness simply does not apply to a voluminous canvassing array of the kind at issue here, and that hence the People need not rebut any such presumption in canvassing array cases (see People v Stokes, 139 AD2d 785, 785 [2d Dept 1988]; cf. People v Ludwigsen, 128 AD2d 810, 810 [2d Dept 1987]).  Thus, the Appellate Division's relatively recent acceptance of the presumption in the canvassing array context, based on a line of prior cases that does not support such an approach (see e.g. People v Robinson, 123 AD3d 1062, 1062-1063 [2d Dept 2014]; People v Dobbins, 112 AD3d 735, 736 [2d Dept 2013]), was without a sound legal foundation and should not be approved by this Court.  Accordingly, I cannot join the part of the majority's opinion adopting the presumption in this case.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order affirmed. Opinion by Judge Fahey.  Chief Judge Lippman and Judges Rivera and Stein concur.  Judge Abdus-Salaam concurs in result in a separate opinion in which Judge Pigott concurs.

Decided December 17, 2015