Chief Judge Lippman
(dissenting). Although I agree with the majority that the Herner dichotomy, between trial preparation on the one hand and identification procedures on the other (see People v Herner, 85 NY2d 877, 879 [1995]), is not conceptually valid and should not be used to shield from Wade scrutiny pretrial prosecutorial photo displays to an identifying witness, I cannot agree that defendant was afforded the Wade hearing to which she was decidedly entitled, much less that the People at the hearing held met their initial Wade burden to demonstrate the nonsuggestiveness of the subject photo display. Nor do I find it possible to conclude that the presumption of suggestiveness arising from the prosecutor’s display of a single arrest photograph of defendant to the complainant was otherwise overcome by what the majority retrospectively dubs “independent source” evidence.
It is, first of all, plain that defendant was never afforded a full Wade hearing and that this was by design, since the announced purpose of the so-called “Herner” hearing was to determine whether a Wade hearing would be needed; indeed, the premise upon which the Herner proceeding was conducted was that if the photo display lent itself to description as “trial preparation,” no Wade hearing would be necessary. And, while there was some inquiry at the hearing as to the circumstances attending the complainant’s observation of her assailant and her two-month removed identification of defendant in a hospital waiting area, the scope of that inquiry was curtailed in accordance with what the court and the parties understood to be the narrow focus of the hearing. This shared understanding was expressly confirmed at the hearing’s conclusion:
“THE COURT: What is the issue?
“[PROSECUTOR]: The issue is if it [was] permissible trial prep or an identification procedure. If it was an identification procedure under the Penal Law th[en] it was —
“THE COURT: Then it is a Wade hearing.
“[PROSECUTOR]: Right. We are not at the point —
“THE COURT: But as the first step both agree if it is ID procedure.
*511 “[DEFENSE COUNSEL]: That is our position as well, if this hearing is for the sole purpose of determining whether or not if the identification procedure, our [sic] trial preparation, if it is deemed to be ID procedure then this gets sent to the Wade hearing.
“[PROSECUTOR]: Yes.
“THE COURT: All right and I will need you both parties to clarify what your positions are on what fact[s] the Court should determine or consider in determining whether it is an ID procedure” (emphasis added).
Consistent with this understanding, defendant’s attorney in her posthearing submission reiterated “[t]he Herner hearing is for the sole purpose of determining whether the state action constituted an ID process,” and the prosecutor argued not that there was an independent source for an in-court identification, but rather that because the photo display did not result in an identification — the image having according to the complainant been too “blurry” for that purpose — there had been no identification procedure that could have affected the basis for plaintiff’s prospective, i.e. in-court, identification. This argument did not invite a finding that there was an independent source for complainant’s in-court identification, i.e., one sufficient to overcome an intervening suggestive identification procedure, only that there had not been anything that could qualify as an intervening identification procedure.
The issue of independent source, then, never having been actually litigated in the context of what was by record agreement a hearing limited to the question of whether or not there had been an identification procedure, there is no preserved argument as to independent source before us, much less anything that could qualify as a competent finding of independent source to support the majority’s harmless error gloss.[1] Indeed, even if this Court were empowered to make a de novo *512 independent source finding, which it is not, there is no record to support one.
Had there been a Wade hearing as there should have, since, as the majority correctly notes, there is “no basis to maintain a distinction between viewings of a defendant’s image in preparation for trial and any other out-of-court identifications [since] [b]oth expose a witness to defendant’s likeness, with the potential risk for undue suggestiveness” (majority op at 506), the prosecution would have had the burden of going forward to demonstrate that the photo display was not unduly suggestive (see People v Chipp, 75 NY2d 327, 335 [1990], cert denied 498 US 833 [1990]). And, where a display of photographs is concerned, that burden cannot be met without either the production of the photograph(s) or testimony detailing the procedures employed to guard against undue suggestiveness (see People v Holley, 26 NY3d 514, 521-524 [2015] [decided herewith]). Here, the arrest photograph shown complainant was never produced and the only proof that its display was nonsuggestive was the complainant’s testimony that the image was too blurred to recognize. Of course, in the absence of the photo or testimony by the prosecutor who displayed it to complainant, there was no way to judge, or for defendant to challenge the truth of, complainant’s facially improbable claim that the arrest photograph, evidently created for the purpose of identifying defendant while she was in custody and purportedly shown to her to enable her verification of defendant’s hairstyle at the time of her arrest, was in fact of such poor quality as to be useless for those purposes. This proof, such as it was, was altogether inadequate to meet the burden that would have been the People’s had this been a Wade proceeding, to show that the pretrial display by the prosecutor of a single arrest photograph of the defendant to the complaining witness some 16 months subsequent to that arrest and 18 months after the incident upon which the arrest identification was premised was not unduly suggestive. Since the People manifestly did not meet their initial Wade burden, they would as a condition of having complainant identify defendant in court have been required to demonstrate, by clear and convincing evidence, that there was an independent basis for complainant’s in-court identification (see Chipp, 75 NY2d at 335). But, plainly, without any means of judging the potency of the intervening presumably suggestive photo display, any conclusion that complainant’s temporally distant observations of her assailant would *513 independently inform her in-court identification could have been based on no more than supposition.
We have recognized the principle, generally accepted among social scientists and cognitive psychologists,[2] that postevent information affects identification accuracy (see People v Santiago, 17 NY3d 661, 670 [2011]; People v LeGrand, 8 NY3d 449, 458 [2007]). It is not consistent with that recognition to simply assume that a display as potentially suggestive as the prosecutor’s was to complainant could have had no distorting effect on her remotely formed memory of her assailant and her trial account of the bus altercation. Certainly, there is not clear and convincing evidence to support that conclusion. In this connection, it should be noted that complainant never identified her assailant out of a pretrial lineup or photo array, much less out of one nonsuggestively composed. Her memory of her assailant, then, was never objectively tested or fixed during the long interval between the incident and defendant’s trial, and, as related in her trial testimony, was thus to an unascertainable degree an amalgam of layers of recollection increasingly malleable and susceptible to suggestion with the passage of time. Whether, under these circumstances, the display of the photograph raised a substantial likelihood of irreparable misidentification was, in accordance with the requisites of constitutionally mandated due process, a matter to be fully explored at a pretrial Wade hearing. Inasmuch as such a hearing never took place, and the record created at the Herner proceeding designedly was not a functional Wade equivalent, the order of the Appellate Term should be reversed and the matter remitted for a new trial, to be preceded by an actual, properly noticed Wade hearing (see People v Burts, 78 NY2d 20, 25 [1991]).
Judges Pigott, Abdus-Salaam and Fahey concur; Chief Judge Lippman dissents in an opinion in which Judge Stein concurs.
Order affirmed.

. Contrary to the majority’s characterization, the motion court did not purport to base its decision of the motion on a finding of independent source. The motion court quite plainly found that the display of the photo was shielded from Wade scrutiny under what it understood to be the Herner trial preparation doctrine. Its observation that the display of the assertedly unrecognizably “blurry” photo would not taint complainant’s in-court identification, viewed in context, was simply an effort to lend additional support to its conclusion that the display did not qualify as an identification procedure at all, a conclusion that this Court is now unanimous in rejecting.

. The majority chides defendant for not “fully developing]” this line of argument below, but apart from the circumstance that the argument rests on principles we have already recognized, the criticism is particularly inapt in the context of an opinion resting upon a post hoc appellate construction of a Wade hearing.