People v Jones (2019 NY Slip Op 04966)





People v Jones


2019 NY Slip Op 04966


Decided on June 19, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 19, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
MARK C. DILLON
JOSEPH J. MALTESE
HECTOR D. LASALLE, JJ.


2015-10141
 (Ind. No. 8099/13)

[*1]The People of the State of New York, respondent,
v
Richard Jones, appellant.


Paul Skip Laisure, New York, NY (Lauren E. Jones of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Jill Oziemblewski of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Michael A. Gary, J.), rendered October 1, 2015, convicting him of robbery in the first degree (two counts) and robbery in the second degree (three counts), upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress in-court identification evidence and, in effect, to suppress evidence that he was identified from a cell phone video.
ORDERED that the judgment is modified, on the law and the facts, (1) by vacating the conviction of robbery in the first degree under count one of the indictment, vacating the sentence imposed thereon, and dismissing that count of the indictment, and (2) vacating the conviction of robbery in the second degree under count two of the indictment and vacating the sentence imposed thereon; as so modified, the judgment is affirmed, that branch of the defendant's omnibus motion which was, in effect, to suppress evidence that he was identified from a cell phone video is granted, and a new trial is ordered on count two of the indictment charging the defendant with robbery in the second degree.
The defendant was indicted in a single indictment on charges stemming from two robberies involving two different complainants, Steven Fisher and Clayton Alfred. The defendant, acting in concert with at least one other individual, allegedly robbed Fisher outside of Fisher's apartment building on September 4, 2013. During the robbery, the defendant allegedly threatened Fisher with a taser. The defendant, acting in concert with at least one other individual, allegedly robbed Alfred in the vestibule of Alfred's apartment building on September 5, 2013. During the robbery, the defendant allegedly injured Alfred using a taser.
At a pretrial suppression hearing, a detective testified that during his investigation of the Fisher robbery, the landlord of Fisher's apartment building gave the detective a cell phone that the landlord found in front of the building. The detective looked through the phone. Thereafter, he conducted two photo identification procedures with Fisher using the photo manager computer system. Fisher viewed the defendant's photograph during one of the procedures, but he did not identify anyone. The detective then showed Fisher the cell phone, told Fisher that it was recovered [*2]from the scene of the robbery, and asked if it was his. Fisher responded that the cell phone was not his. The detective had Fisher view videos that were saved on the cell phone, one of which portrayed a male tasing an individual who was sleeping on a staircase. Fisher identified the male who was seen in the video using a taser as one of the individuals who robbed him.
The detective testified that he submitted a still photograph of the male with the taser from the video to a facial recognition software program, which matches photographs to the photographs of criminal offenders that are stored in a database. The defendant was a match for the male depicted in the still photograph. The detective produced a photo array, which contained six photographs, including the same photograph of the defendant that Fisher had previously viewed in the photo manager system. Fisher identified the defendant in the photo array as one of the individuals who robbed him. Approximately a week later, Fisher identified the defendant in a lineup as the individual with the taser who robbed him.
In an omnibus motion, the defendant moved, inter alia, to suppress Fisher's lineup identification and, in effect, to suppress any evidence demonstrating that Fisher identified the defendant from the cell phone video. The Supreme Court, inter alia, granted that branch of the defendant's omnibus motion which was to suppress Fisher's lineup identification and directed an independent source hearing. However, the court denied that branch of the defendant's motion which was, in effect, to suppress the evidence that Fisher identified the defendant as the male in the cell phone video, finding that the identification did not occur during a police-arranged identification procedure.
Prior to trial, the Supreme Court determined that it would not permit the People to introduce the video from the cell phone into evidence. However, the court permitted the People to introduce into evidence a still photograph taken from the cell phone video of the male with the taser, which did not depict the taser in his hands, as well as testimony regarding that photograph.
At trial, the superintendent of Fisher's apartment building testified that shortly after the robbery occurred, he found a cell phone outside of the building. According to the superintendent, he called Fisher to see if the cell phone was his, and Fisher replied that it was not. The detective testified that the superintendent gave him the cell phone, and the detective then "conducted an investigation into the cell phone and recovered three photographs." According to Fisher, the detective showed him a few "images" from the cell phone, and Fisher recognized the defendant from one photograph as the individual who threatened him with the taser during the robbery. The photograph was admitted into evidence.
The defendant contends that the People failed to establish, beyond a reasonable doubt, his guilt of robbery in the first degree as to Alfred under count seven of the indictment because there was legally insufficient evidence to establish that the taser used against Alfred was a "dangerous instrument" (Penal Law §§ 160.15[3]; 10.00[13]; see Penal Law § 10.00[10]). Viewing the evidence in the light most favorable to the People (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish that the taser was a dangerous instrument (see People v MacCary, 173 AD2d 646; cf. People v Hall, 18 NY3d 122). Moreover, upon the exercise of our factual review power (see CPL 470.15[5]), we are satisfied that the verdict of guilt as to that count was not against the weight of the evidence (see People v Richard, 30 AD3d 750). However, we find that the verdict of guilt on count one of the indictment, charging the defendant with robbery in the first degree as to Fisher, was against the weight of the evidence (see generally People v Romero, 7 NY3d 633). Therefore, the conviction under that count and the sentence imposed thereon must be vacated, and that count of the indictment must be dismissed.
We disagree with the Supreme Court's determination denying that branch of the defendant's omnibus motion which was, in effect, to suppress evidence that Fisher identified the defendant from the cell phone video. "[U]nduly suggestive pretrial identification procedures violate due process and therefore are not admissible to determine the guilt or innocence of an accused" (People v Chipp, 75 NY2d 327, 335; see People v Busano, 141 AD3d 538, 539). "Review of [*3]whether a pretrial identification procedure is unduly suggestive is subject to a well-established burden-shifting mechanism" (People v Holley, 26 NY3d 514, 521). At the first step, the People must meet only their "initial burden of going forward to establish the reasonableness of the police conduct and the lack of any undue suggestiveness" (People v Chipp, 75 NY2d at 335), which is a "minimal" burden of "production" (People v Ortiz, 90 NY2d 533, 538; see People v Holley, 26 NY3d at 526-527 [Abdus-Salaam, J., concurring]). "If this burden is not sustained, a peremptory ruling against the People is justified. If the People meet their burden of production, the burden shifts to the defendant to persuade the hearing court that the procedure was improper" (People v Holley, 26 NY3d at 521). In other words, "[w]hile the People have the initial burden of going forward to establish . . . the lack of any undue suggestiveness in a pretrial identification procedure, it is the defendant who bears the ultimate burden of proving that the procedure was unduly suggestive" (People v Chipp, 75 NY2d at 335; see People v Holley, 26 NY3d at 521).
Here, contrary to the Supreme Court's finding, the procedure employed by the detective in showing Fisher the cell phone videos was a police-arranged identification procedure, even though the police did not arrange the content of the videos on the phone. The procedure by which Fisher viewed the videos occurred at the "deliberate direction of the State," and not as a result of mere happenstance (People v Dixon, 85 NY2d 218, 223). The People failed to meet their initial burden of establishing the reasonableness of the police conduct and the lack of any undue suggestiveness created by the video identification procedure. By showing Fisher the cell phone and telling him that the phone was recovered from the scene of the robbery, the detective suggested that the phone may belong to one of the perpetrators of the robbery. One of the videos portrayed an individual using a taser on someone else, which was similar to Fisher's description of the circumstances of the robbery. Fisher identified the defendant's photograph in a photo array only after he was shown the video. Further, contrary to the People's contention, it cannot be said that the video did not single out or portray the individual with the taser in a negative light. The video portrayed the individual committing a violent criminal act against another person (cf. People v Hall, 168 AD3d 761; People v Davis, 115 AD3d 1167, 1169). Accordingly, the court should have suppressed the video identification on the ground that the identification procedure was unduly suggestive.
The error in admitting evidence that Fisher identified the defendant from a photograph on the cell phone was harmless with respect to count seven of the indictment, charging the defendant with robbery in the first degree, and counts eight and nine of the indictment, charging the defendant with robbery in the second degree, which arose from the robbery involving Alfred (see People v Crimmins, 36 NY2d 230, 237). Nevertheless, we cannot say that the error was harmless beyond a reasonable doubt with respect to count two of the indictment, charging the defendant with robbery in the second degree, which arose from the robbery involving Fisher (see id. at 237; People v Dunbar, 104 AD3d 198, 214-215, affd 24 NY3d 304). We agree with the Supreme Court's conclusion that Fisher's observations during the commission of the robbery provided an independent basis for his in-court identification of the defendant. However, in the context of the Fisher robbery, which rested almost entirely on the identification of a single witness, even with an in-court identification by Fisher of the defendant, it cannot be said that the evidence of guilt was overwhelming, or that there is no reasonable possibility that the error might have contributed to the conviction (see People v James, 128 AD3d 723, 728). Accordingly, the conviction of robbery in the second degree under count two of the indictment and the sentence imposed thereon must be vacated and a new trial ordered on that count.
We agree with the Supreme Court's denial of the defendant's motion to sever the counts of the indictment related to the Fisher robbery from the counts of the indictment related to the Alfred robbery. The counts were properly joined under CPL 200.20(2)(b) (see People v Bongarzone, 69 NY2d 892, 895; People v Jones, 131 AD3d 1179, 1180; People v Currie, 117 AD3d 1074, 1075-1076; People v West, 160 AD2d 301, 301-302). As the offenses were properly joined in one indictment from the outset pursuant to CPL 200.20(2)(b), the court lacked the statutory authority to sever them (see CPL 200.20[3]; People v Bongarzone, 69 NY2d at 895; People v Senat, 165 AD3d 705; People v Bonilla, 127 AD3d 985, 986).
The defendant's contention that the Supreme Court's Sandoval ruling (see People v Sandoval, 34 NY2d 371) deprived him of his constitutional right to a fair trial is unpreserved for appellate review, as he did not raise any constitutional challenge to the Sandoval ruling before the court (see CPL 470.05[2]; People v Wheelings, 137 AD3d 1310, 1311). In any event, the court's Sandoval ruling did not deprive the defendant of a fair trial. The court providently exercised its discretion in ruling that, if the defendant testified, the prosecution could cross-examine him on particular facts underlying a prior conviction of robbery in the second degree, as the defendant failed to show that allowing such cross-examination was so prejudicial as to outweigh the probative value of the questioning (see People v Hayes, 97 NY2d 203, 208; People v DeJesus, 135 AD3d 872, 873; People v Vetrano, 88 AD3d 750, 750). That prior conviction was highly relevant to the defendant's credibility, and was admissible notwithstanding its similarity to the present offenses (see People v Hayes, 97 NY2d at 207; People v DeJesus, 135 AD3d at 873; People v Marcus, 112 AD3d 652, 653; People v Hayes, 44 AD3d 683, 683).
The defendant failed to preserve for appellate review his contention that the prosecutor made certain improper comments during summation that, inter alia, commingled evidence concerning the robberies (see CPL 470.05[2]; People v Bass, 164 AD3d 1463, 1464). In any event, under the circumstances of this case, since the two robberies shared the same distinctive modus operandi, the prosecutor was properly permitted to comment during summation upon the similarities between the robberies (see People v Currie, 117 AD3d 1074, 1075; People v Lewis, 101 AD3d 1154; People v Salton, 74 AD3d 997; People v Ramos, 37 AD3d 740). To the extent that some of the challenged remarks were improper, those remarks constituted harmless error (see People v Wisdom, 164 AD3d 928, 931; People v Watson, 163 AD3d 855, 869).
The defendant's contention that the Supreme Court's procedure for handling a jury note that requested, inter alia, certain trial exhibits violated the procedure set forth by the Court of Appeals in People v O'Rama (78 NY2d 270, 277-278) is unpreserved for appellate review (see People v Ramirez, 15 NY3d 824). In addition, the defendant's contention that the Supreme Court failed to provide a meaningful response to a note that requested clarification as to whether the jury was properly permitted to use evidence from one robbery to reach a verdict with respect to the counts arising from the other robbery is partially unpreserved for appellate review. Furthermore, these alleged errors did not constitute mode of proceedings errors, which would obviate the preservation requirement (see People v Mack, 27 NY3d 534; People v Mays, 20 NY3d 969, 971; People v Damiano, 87 NY2d 477, 487; People v Lewis, 140 AD3d 1593; People v Jackson, 105 AD3d 607; People v Gerrara, 88 AD3d 811, 812). In any event, the defendant's contentions are without merit.
The sentence imposed on the convictions of robbery in the first degree under count seven of the indictment and robbery in the second degree under counts eight and nine of the indictment was not excessive (see People v Suitte, 90 AD2d 80).
The defendant's remaining contentions either need not be addressed in light of our determination or are unpreserved for appellate review and, in any event, without merit.
SCHEINKMAN, P.J., DILLON, MALTESE and LASALLE, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court