OPINION OF THE COURT
Rivera., J.
Defendant claims that the trial court, relying on People v Herner (85 NY2d 877 [1995]), and affirmed by the Appellate Term, improperly denied her request for a Wade hearing to determine the suggestiveness of a prosecutor’s pretrial display to complainant of defendant’s arrest photograph, on the ground that the display was trial preparation, and not an identification procedure. Defendant further argues that we should repudiate a practice that has developed post -Herner into an exception to Criminal Procedure Law § 710.30.
Upon consideration of the applicable statutory mandates and case law, as well as the concerns over mistaken identification and the potential risk of wrongful convictions based on eyewitness error, we conclude that the trial-preparation exception and the procedural mechanism designed to determine its application to any particular case, the so-called Herner hearing, serve as an obstacle to judicial scrutiny of potentially unconstitutionally suggestive identification procedures. The Herner procedure is, furthermore, unnecessary, because a Wade hearing adequately ensures against the admission of an unreliable identification.
We further conclude that the trial court here improperly denied defendant’s requests for a Wade hearing, but such error was harmless as there is record support for the trial court’s alternative finding of an independent source for complainant’s in-court identification of defendant. Therefore, Appellate Term should be affirmed.
L
The People charged defendant Kaity Marshall with several offenses arising from an assault of a passenger on a New York *499 City bus. Initially, the police were unable to locate a suspect, despite descriptions of the assailant from the complainant and the bus driver. Then, two months after the incident, complainant was at a hospital pharmacy when, by mere happenstance, she saw defendant and recognized her. Complainant immediately called the police, and identified defendant as the assailant. Defendant was arrested at the hospital and later charged with assault in the third degree (Penal Law § 120.00 [1]), criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [2]), menacing in the second degree and third degree (Penal Law §§ 120.14, 120.15), and harassment in the second degree (Penal Law § 240.26 [1]).
Eighteen months after the bus incident, and the day before a scheduled court appearance on defendant’s criminal case, the prosecutor met with complainant and showed her a photograph of defendant taken on the day of her arrest. In court the following day, the prosecutor informed the judge and defense counsel that as part of trial preparation he had shown complainant the photograph in order to aid him in understanding her description of defendant’s hairstyles on the day of the attack and when she was arrested.
As part of defendant’s omnibus motion, and in response to the prosecutor’s disclosure, defense counsel requested a hearing pursuant to Herner (85 NY2d at 879) to establish that the photograph display constituted an identification procedure under CPL 710.30, necessitating a Wade hearing to determine whether the display was unduly suggestive. In support of the motion, counsel argued that the photograph display likely tainted complainant’s anticipated in-court identification, “thus transforming [complainant’s] initial identification into one that is now certain based on a suggestive identification procedure,” which therefore required preclusion of the identification made at the hospital. Counsel also requested to call as a witness the Assistant District Attorney (ADA) who displayed the photograph to complainant.
The court granted the hearing but denied the request to call the ADA. Instead, the sole witness at the hearing was complainant, who testified not only about the meeting with the ADA, but also about the attack, the assailant’s appearance and her identification of defendant at the hospital. In recounting the incident, complainant asserted that she took a good look at the assailant so that she would recognize her if she ever saw her again. She described the assailant as a black woman, between *500 20 and 40 years of age, who, as compared to herself, had a straighter face, a slightly larger nose and a much darker complexion. Complainant further testified that the next time she saw the assailant was by chance, at a hospital, two months after the incident. She stated that she had no doubt that this woman was the same person who had attacked her on the bus.
In response to questions about her meeting with the ADA, complainant testified that he showed her a photograph and asked her if she knew the picture, that the photograph was blurry and that she had only glanced at it. She also stated that the photograph did not change her mind about her memory of the attacker. The People did not submit the photograph into evidence. On cross-examination, complainant stated that she had not seen a photograph of the woman who was arrested, had not previously seen the photograph shown to her at the meeting with the ADA, and that she did not remember the ADA asking about defendant’s hairstyle, or for a description of the assailant.
In her post-hearing submission, defense counsel again argued that the photograph display was a suggestive identification procedure that should be tested further in a Wade hearing, and that defendant should be permitted to call as a witness the ADA who interviewed complainant. The People responded that the display was trial preparation, and, regardless, they did not intend to offer the photograph into evidence because complainant’s pre-arrest hospital identification of defendant served as an untainted basis for an in-court identification.
The court rejected defendant’s arguments and determined that the photograph display was part of trial preparation. The court also concluded that, given complainant’s prior identification of defendant at the hospital, her “brief viewing of the blurry photo [would] not taint an in-court identification of Defendant.”
IL
At defendant’s nonjury trial, the People relied heavily on eyewitness testimony from complainant and the bus driver. Complainant repeated much of the testimony from the pretrial hearing. She again recounted that one afternoon she was seated riding a city bus in Brooklyn with her daughter when another female passenger, whom complainant had never seen before, stood in front of her to look out the window and stepped on her foot. After the woman sat down, complainant remarked *501 to her that she had failed to apologize. The woman then stood up and punched complainant repeatedly in the face, nose and head, giving complainant a bloody nose and injuring her left eye. During the physical altercation, complainant attempted to defend herself, but the woman pulled out a knife and threatened to kill her. Several passengers were screaming, causing the bus driver to look in the rearview mirror where he saw the woman, who was unknown to him, and complainant, whom he recognized as a previous passenger. He again briefly saw the assailant, now wearing sunglasses, as she exited the bus when it reached the next stop.
Complainant made an in-court identification of defendant as her assailant. Complainant also testified as to her out-of-court, spontaneous identification of defendant at the hospital. Complainant made no reference to any other pretrial identification and did not testify about the photograph display. The People did not submit the photograph into evidence.
The People’s other eyewitness was the bus driver, who made an in-court identification of defendant as the woman he observed punch complainant in the face. He testified that during the altercation he took a good look at defendant’s face, and described for the court the attacker’s race, approximate age, weight and clothing.
Defendant testified that she was with her mother at a laundromat at the time of the attack. She submitted into evidence her cellular telephone records, which showed that calls were made and text messages were sent from her phone at the approximate time of the incident. The records indicated that two of these text messages were sent to her mother’s phone number, which defendant claimed were unintentional. Defendant further testified that on the day of her arrest she heard complainant tell the officers that she was not sure defendant was the attacker, and asked to call her daughter to verify, and that later, at the precinct, defendant saw complainant with a younger woman, who she overheard say “[M]om, that’s not her.”
Defendant’s mother also testified, and corroborated that her daughter was with her at a laundromat and that defendant was texting on her phone at the time of the incident. On cross-examination, defendant’s mother admitted that she had not previously informed defense counsel, the prosecutor or the police that defendant was with her on the day of the attack.
*502 On rebuttal, the People presented testimony from the two arresting officers who stated that complainant told them she was 100% sure defendant was the attacker and that she never wavered.
The court found defendant guilty of attempted assault in the third degree (Penal Law §§ 110.00, 120.00 [1]), attempted criminal possession of a weapon in the fourth degree (Penal Law §§ 110.00, 265.01 [2]), menacing in the third degree (Penal Law § 120.15), and harassment in the second degree (Penal Law § 240.26 [1]). The Appellate Term affirmed, concluding as relevant here, that the pretrial photograph display was permissible trial preparation and, since complainant identified defendant upon her arrest, the display did not taint complainant’s in-court identification. The court also rejected defendant’s claim that the ADA should have been called at the hearing (42 Misc 3d 141 [A], 2014 NY Slip Op 50215[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2014]). A Judge of this Court granted defendant leave to appeal (23 NY3d 1039 [2014]). We now affirm.
III.
Wrongful convictions based on mistaken eyewitness identifications pose a serious danger to defendants and the integrity of our justice system (United States v Wade, 388 US 218, 228 [1967] [“The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification”]; People v Santiago, 17 NY3d 661, 669 [2011] [“mistaken eyewitness identifications play a significant role in many wrongful convictions”]; People v Riley, 70 NY2d 523, 531 [1987] [“The complex psychological interplay and dependency of erroneously induced identification . . . must be vigilantly guarded against because (it) drives right into the heart of the adjudicative guilt or innocence process affecting the person accused and identified”]; People v Caserta, 19 NY2d 18, 21 [1966] [“One of the most stubborn problems in the administration of the criminal law is to establish identity by the testimony of witnesses to whom an accused was previously unknown, from quick observation under stress or when . . . there was no particular reason to note the person’s identity”]).
Apart from the uncertainty of human memory, suggestive identification procedures “increase the dangers inhering in eyewitness identification” (Wade, 388 US at 229). A pretrial identification procedure that unduly suggests a defendant’s *503 guilt of the charged offense increases the risk of misidentification by improperly influencing the witness. As the Supreme Court has recognized,
“[p]ersons who conduct the identification procedure may suggest, intentionally or unintentionally, that they expect the witness to identify the accused. Such a suggestion, coming from a police officer or prosecutor, can lead a witness to make a mistaken identification. The witness then will be predisposed to adhere to this identification in subsequent testimony at trial” (Moore v Illinois, 434 US 220, 224-225 [1977]).
Furthermore, even employing “the most correct photographic identification procedures,” displays conducted by the police contain “some danger that the witness may make an incorrect identification” (Simmons v United States, 390 US 377, 383 [1968]). “Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in . . . memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification” (id. at 383-384). It is inescapable that “[a] major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification” (Wade, 388 US at 228).
The unfairness to the defendant and the unreliability of such procedures adversely impact the truth-finding process. Therefore, a pretrial identification procedure that is unduly suggestive violates a defendant’s due process rights and is “not admissible to determine the guilt or innocense of an accused” (People v Chipp, 75 NY2d 327, 335 [1990], citing Wade, 388 US 218, People v Blake, 35 NY2d 331 [1974], Riley, 70 NY2d 523, People v Adams, 53 NY2d 241 [1981]).
A defendant may generally challenge suggestive procedures pursuant to CPL 710.30, which New York’s legislature enacted in “response to the problem of suggestive and misleading pretrial identification procedures” (People v Gissendanner, 48 NY2d 543, 552 [1979]), and in “recognition of the importance of testing the reliability of identification testimony before trial” (People v Rodriguez, 79 NY2d 445, 449 [1992]). This Court has explained that “[t]he statutory scheme ensures that the identifications are not the product of undue suggestiveness, *504 and lessens the possibility of misidentification” (People v Boyer, 6 NY3d 427, 431 [2006], citing Rodriguez, 79 NY2d at 449, People v Newball, 76 NY2d 587, 590-591 [1990]). As the Court stated in Boyer, “ [t]he statutory mandate is plain and the procedure simple: the People serve notice, the defendant moves to suppress and the court holds a Wade hearing to consider the suppression motion” (6 NY3d at 431). Although a court may summarily deny a request to suppress evidence where the defendant fails to allege a legal basis for the motion (CPL 710.60 [3]), “so long as the motion alleges undue suggestiveness, the defendant is generally entitled to a Wade hearing” (Boyer, 6 NY3d at 431).
Furthermore, if “the pretrial identification procedure is shown to be impermissible and improper, any in-court identifications, though not per se excludable, are not to be received in evidence ‘without first determining that they were not tainted by the illegal [procedure] but were of independent origin’ ” (People v Ballott, 20 NY2d 600, 606 [1967], quoting Gilbert v California, 388 US 263, 272 [1967]; see also People v Logan, 25 NY2d 184 [1969]; People v Rahming, 26 NY2d 411, 416 [1970]). In other words, an in-court identification is admissible only if the People establish by clear and convincing evidence that it “was neither the product of, nor affected by, the improper pretrial” procedure (Rahming, 26 NY2d at 416, citing Logan, 25 NY2d at 191, Ballott, 20 NY2d at 606-607).
Here, rather than focus the hearing directly on whether the photograph display was unduly suggestive, the court proceeded to consider whether, as the People argued, the display was trial preparation and thus fell outside the ambit of CPL 710.30, or, as the defendant maintained, the display constituted an identification procedure and thus a proper subject of a Wade hearing. The court, defendant and the People interpreted this Court’s memorandum decision in Herner as approving what is essentially a pre-Wade hearing designed to assess the need for a judicial determination on suggestiveness.
In Herner (85 NY2d at 878), during the course of preparing the identifying witness to testify at trial, the prosecutor showed her a picture of the lineup at which she had identified the defendant. The prosecutor asked if she remembered the lineup, and the witness answered affirmatively (id.). The witness was also shown the picture a second time the morning before she testified (id.). This Court agreed with the courts below that the pretrial display of the photograph was trial preparation and *505 not an identification procedure subject to the notification requirement of CPL 710.30. Lower courts have construed Herner as establishing a so-called trial-preparation exception to a Wade hearing (see e.g. People v Bulgin, 29 Misc 3d 286, 304 [Sup Ct, Bronx County 2010] [identification of defendant in photograph arrays approximately 16 months after the showup and original photograph identification was trial preparation]; People v Jackson, 43 AD3d 488, 489 [3d Dept 2007] [review of tape recordings of meetings between a confidential informant and the defendant just before the confidential informant’s testimony at trial were trial preparation and not identification procedures and therefore did not require notice under CPL 710.30]; People v Hopkins, 284 AD2d 223, 223 [1st Dept 2001] [witness’s viewing of arrest photographs of defendant and codefendant prior to the witness’s testimony to review the roles of each in the robbery was trial preparation and not an identification procedure and therefore the Wade hearing was unnecessary]; People v Jerold, 278 AD2d 804, 804 [4th Dept 2000] [as the witness had already identified the defendant, her viewing, before testifying, of a photograph array and another photograph of the defendant was trial preparation and did not taint her subsequent in-court identification of the defendant]; People v Randolph, 232 AD2d 327, 327 [1st Dept 1996] [witness’s viewing of photographs of the defendant and two other people arrested in connection with the case, in order to help the witness, who was not fluent in English, to explain the roles of each person in the robbery was not an identification procedure, and therefore was not subject to the requirements of CPL 710.30]).
Defendant claims that the trial-preparation exception recognized in Herner is inconsistent with New York’s approach to suggestive pretrial identifications. We agree. By employing this truncated hearing protocol, the court failed to reach the essential question whether the photograph display was unduly suggestive, and, if so, whether it tainted complainant’s identification of defendant. When a defendant challenges the suggestiveness of an out-of-court viewing of defendant’s likeness, the central issue presented for judicial consideration is whether the pretrial display is conducted under circumstances bearing the earmarks of improper influence and unreliability, which create the risk of mistaken identification and thus infect the truth-seeking process.
The concern that a pretrial identification will result in witness error is the same regardless of the People’s motive. *506 Whether the procedure is intended to refresh or anchor the identification of defendant in the witness’s memory before trial, or intended to assist the ADA in preparing the case, the relevant inquiry remains the same: was the observation of defendant unduly suggestive, rendering the subsequent identification unreliable.
Indeed, this Court has previously recognized that showing one photograph of a defendant — the procedure at issue in defendant’s case — carries the risk of undue suggestiveness and entitles defendant to a Wade hearing (Rodriguez, 79 NY2d at 453 [“Defendant was presumptively entitled to the Wade hearing on alleging that the police display of a single photo to (the identifying witness) was suggestive”]; Matter of James H., 34 NY2d 814, 816 [1974] [“The danger is increased when a single photograph is exhibited which tends to emphasize the person portrayed as the person sought”]). We can find no basis to maintain a distinction between viewings of a defendant’s image in preparation for trial and any other out-of-court identifications. Both expose a witness to defendant’s likeness, with the potential risk for undue suggestiveness.
We therefore see no reason to encumber our courts with an additional pre-Wade hearing. Instead, upon defendant’s motion, a court must hold a formal pretrial hearing to determine whether the police or prosecutor conducted an out-of-court identification procedure that exposed the witness to defendant’s identity in an unduly suggestive manner (Boyer, 6 NY3d at 431). The People bear the initial burden to establish a lack of any undue suggestiveness, but the defendant “bears the ultimate burden of proving that the procedure was unduly suggestive” (Chipp, 75 NY2d at 335). If the court finds no undue suggestiveness, the motion is denied and the People may admit the identification at trial. If the court finds the procedure to have been unduly suggestive, and the People have failed to establish by clear and convincing evidence the existence of an independent source for the identification, the motion is granted (Rahming, 26 NY2d at 417). In that case, the pretrial identification is suppressed and an in-court identification tainted by the prior identification procedure precluded (Chipp, 75 NY2d at 335). We recognize that absent a showing of suggestiveness the People bear no burden to come forward with evidence of an independent source (id.). However, we repeat our previous *507 observation that to avoid unnecessary additional proceedings, the hearing should fully address whether there is some basis for inclusion at trial of the challenged identification (see People v Wilson, 5 NY3d 778, 780 [2005] [“in light of the ‘risk for completely renewed proceedings’ whenever a pretrial identification is challenged, the People are generally well-advised to come forward with any independent source evidence at a Wade hearing so that the suppression court may, where appropriate, rule in the alternative”], quoting People v Burts, 78 NY2d 20, 25 [1991]).
Here, the People maintain defendant is not entitled to a Wade hearing because the ADA showed defendant’s arrest photograph to complainant in order for complainant to explain defendant’s appearance on the separate occasions of the attack and her arrest, and not for purposes of an identification.[1] However, complainant had to determine whether the person in the picture was the person she remembered as the assailant. Defendant correctly argues she was entitled to a Wade hearing *508 to determine if the display was unduly suggestive, and, therefore, tainted an in-court identification.[2]
However, on the facts of this case, this error was harmless. As is clear under the law, the People are entitled to establish that there is an independent source for an in-court identification (Wade, 388 US at 241; Chipp, 75 NY2d at 335; Adams, 53 NY2d at 248). Here, the trial court relied on complainant’s identification of defendant at the hospital for its finding that there was no substantial likelihood that complainant misidentified defendant and thus concluded that the photo did not taint the in-court identification of defendant. In essence, the court found an independent source and the Appellate Term affirmed.[3] Such determination resolved an issue of fact and therefore is beyond our review if supported by the record, unless the determination is erroneous as a matter of law (People v Young, 7 NY3d 40, 44 [2006], citing People v Malloy, 55 NY2d 296, 300 [1982]; People v Dickerson, 50 NY2d 937, 938 [1980]).
On the record before us we cannot say there is no support for the court’s finding. The complainant testified at the hearing that she saw defendant at the hospital by chance and recognized her as the assailant. She then called the police, and, when they arrived, she pointed out defendant as the woman who previously attacked her on the bus. She further testified that viewing the photograph did not affect her memory of the assailant. This was sufficient to establish an independent source for the complainant’s in-court identification.[4]
*509 Nevertheless, defendant claims that she did not have an opportunity to address the independent source issue because the court, the People and defense counsel understood the hearing to be limited to the trial preparation/identification procedure question. While there is some support in the hearing transcripts for defendant’s argument that the hearing was circumscribed, the record also establishes that defense counsel did, in fact, cross-examine complainant about the hospital identification. She asked complainant why she was at the hospital pharmacy, how much time passed before she recognized defendant, how she came to notice the defendant, what the defendant was wearing and doing when complainant saw her, and the circumstances leading to complainant calling the police. Such questions were wholly unnecessary if, as defendant contends, she understood the hearing to focus solely on the suggestiveness of the photograph display.
Furthermore, defendant cannot argue that she was unaware of the proposed alternative ground for the in-court identification, or, as the dissent suggests, that the People limited their argument to whether the display was trial preparation or an identification procedure. The People consistently took the position in their opposition papers to defendant’s request for a hearing and in their post-hearing memorandum that the prior hospital identification was an independent source. Indeed, in anticipation of the People’s argument on this ground, defendant asserted in her post-hearing submission that whether prior viewings of defendant provided the basis for an independent in-court identification should be resolved in a Wade hearing or in an independent source hearing. Moreover, defendant’s request for another hearing, even though record evidence of an independent source exists, encourages the unnecessary expenditure of judicial resources and is at odds with the procedure sanctioned in People v Burts (78 NY2d at 24-25) and People v Wilson (5 NY3d at 780). In those cases, this Court recommended that the People present evidence of the independent source at the pretrial hearing, so as to avoid the need for renewed hearings should the trial court’s non-suggestiveness determination be reversed on appeal.
*510 Given our decision we have no occasion to address defendant’s claim that the court erred in denying her request to call the ADA as a witness at the hearing.
Accordingly, the order of the Appellate Term should be affirmed.

. The People alternatively argue that no Wade hearing is required because complainant failed to identify defendant during the display of the photograph, as in the case of People v Trammel (84 NY2d 584 [1994]). However, because complainant’s lack of identification is disputed, and the record is subject to conflicting interpretations on this question, we find Trammel inapplicable under the unique circumstances of this case. Here, because the People failed to introduce the photograph at the hearing, and the complainant’s testimony was unclear and appeared to contradict the ADA’s description of the meeting, defendant was entitled to explore the circumstances of complainant’s viewing of the photograph. Thus, while a hearing is generally unnecessary where the record reveals no substantial basis to dispute the lack of a pretrial identification, here such a substantial basis exists, removing this case from Trammel’s ambit. Moreover, if, as the People contend, complainant failed to recognize the person in the picture as the assailant, defendant may have been entitled to this material under Brady v Maryland (373 US 83, 87 [1963] [“suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment”]).
The People also claim that the court was not required to determine the suggestiveness of the photograph display because the People did not intend to, and, in fact, did not, introduce the photograph as part of the prosecution’s case-in-chief. While true, this does not alter our analysis because the complainant made an in-court identification during the prosecutor’s direct examination, and our case law is clear that before an in-court identification may be admitted the People must establish that it was not tainted by a suggestive and improper prior identification procedure (see Rahming, 26 NY2d at 416). Thus, at a minimum, defendant was entitled to a Wade hearing on the suggestiveness of the photograph display as it pertains to complainant’s in-court identification of defendant as the assailant.

. Defendant did not challenge the bus driver’s in-court identification; therefore we have no occasion on this appeal to consider any potential suggestiveness and admissibility of first-time, in-court identifications, as urged by amicus.

. The dissent argues that there was no independent source finding because the trial court’s reference to the blurry photo was merely “an effort to lend additional support to its conclusion that the display did not qualify as an identification procedure at all” (dissenting op at 511 n 1). This selective reading of the opinion is contradicted by the trial court’s conclusion that the hospital viewing and the photo display would not taint an in-court identification.

. Our opinion in no way retreats from our recognition in People v Santiago (17 NY3d 661, 670 [2011]) and People v LeGrand (8 NY3d 449, 458 [2007]) that post-event information affects the accuracy of subsequent identifications. However, we disagree with the dissent’s apparent assertion that on the strength of the statements in those prior cases defendant is entitled to another hearing (dissenting op at 513). Nor did defendant fully develop below, and thus preserve for our consideration, her argument that an independent source identification may be subject to the same dangers of *509 eye-witness misidentification as those associated with law-enforcement orchestrated pretrial identifications procedures. Therefore, we provide no opinion on whether the developing data and case law on memory and eyewitness identification puts in question the continuing viability of independent source identifications.