People v Perry (2026 NY Slip Op 01617)

People v Perry

2026 NY Slip Op 01617

Decided on March 19, 2026

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: March 19, 2026

Before: Moulton, J.P., Gesmer, Rodriguez, Higgitt, Michael, JJ. 

Ind No. 70769/21|Appeal No. 5114|Case No. 2024-01001|

[*1]The People of the State of New York, Respondent,
vKahreem Perry, Defendant-Appellant.

Jenay Nurse Guilford, Center for Appellate Litigation, New York (Jacquelyn Shelton of counsel), for appellant.
Alvin L. Bragg, Jr., District Attorney, New York (Anna Notchick of counsel), for respondent.

Judgment, Supreme Court, New York County (Diane Kiesel, J., at suppression hearing; Abraham Clott, J., at trial and sentencing), rendered February 7, 2024, convicting defendant of criminal possession of a controlled substance in the fourth degree, and sentencing him, as a second felony drug offender with a prior violent felony conviction, to a term of six years, unanimously reversed, on the law and the facts, defendant's motion to suppress granted, the judgment of conviction vacated, and the indictment dismissed.
In the early morning hours of October 23, 2021, the police received notification of a robbery committed by a "skinny" black male in his 30s or 40s who was approximately five feet, five inches to five feet, six inches tall, a description arguably fitting defendant. The perpetrator was also described as wearing a red bandana around his neck, a black hooded sweatshirt, and black sweatpants.[FN1] In the course of the search incident to the arrest of defendant, who was found in a stairwell in the building where the crime had allegedly occurred wearing a red baseball hat, red face mask, red t-shirt, and blue shorts, the police recovered a quantity of crack cocaine and marijuana.
Prior to the initial police encounter with defendant, the responding officers interviewed two witnesses, a mother and son, who both informed them that the perpetrator had entered their apartment, demanded money, left after being given $20 by the son, and dropped a cellphone in the process. Both repeatedly commented that "it happened so fast" in response to investigatory questioning. The son provided the description of the suspect; the mother expressed neither agreement nor disagreement with the son's description but independently provided no detail other than the suspect's height because it was similar to her own. Law enforcement conducted a showup identification procedure with the mother, who agreed to participate, while the son declined to participate in the procedure, asserting that his mother had more of an opportunity to observe the perpetrator.
The mother appeared passive and repeatedly expressed that she was "shaken up." The officer who interviewed the witnesses questioned the mother's acuity more than once prior to the identification procedure. Because, while being escorted to where the officers were holding defendant on a different floor, the mother expressed fear that defendant would "come after" her after he was released from prison, it was decided that instead of requiring her to confront defendant in person, the mother would be shown a picture of defendant that one of the officers took with a cell phone. She was not required to approach defendant after exiting the elevator; however, given the narrow and angular path of the hallway, the agitated defendant was clearly audible to her, and many of the several officers surrounding defendant, at least one of whom was visible in the photo, were immediately apparent to her. She was shown the photo and asked "Is that him?" to which she responded that it "looked like" him, but that he had changed his clothes. Defendant was not arrested at that time, but was arrested approximately 15 minutes later, after the mother was shown the photo several more times and asked whether it depicted the perpetrator.
The central issue on appeal is whether Supreme Court properly denied defendant's motion to suppress drugs recovered from him upon his arrest. The resolution of this issue rests on whether law enforcement had a lawful basis to arrest defendant. Defendant argues that the recovered drugs were the products of an arrest constituting an unconstitutional search and seizure because it was not based on probable cause; the People argue that defendant was permissibly stopped for a level 3 investigatory detention (see People v De Bour, 40 NY2d 210, 222-223 [1976]), and that the officers obtained probable cause to arrest defendant within 12 minutes after the initial stop, when the mother first identified defendant from the cell phone photograph.
Defendant moved to suppress the items recovered during the search. After conducting a hearing, Supreme Court denied the motion. With respect to the Dunaway aspect of the hearing, the court found that the officers received a "full" description of the suspect, and that they had probable cause to arrest defendant based on the positive showup identification which occurred in close temporal and geographical proximity to the incident. With respect to the Huntley aspect of the hearing, the court suppressed nearly all of defendant's statements made at the scene because the average person in defendant's position would not have thought he or she was free to leave, and defendant had not received Miranda warnings. With respect to the Wade aspect of the hearing, Supreme Court found that "there was certainly no police suggestibility" in the identification of defendant, considering that the witness was shown a picture of defendant after expressing fear of seeing him in person and was asked whether the photograph depicted defendant in a manner that did not suggest the answer. The court offered that an in-person identification would have been more suggestive, given that defendant was surrounded by officers. The court's decision was based on the initial identification of defendant, and not on any subsequent identification-related questioning of the witness.
The mother's initial response upon being shown defendant's photo did not give the officers reasonable belief that she had made a knowing identification of defendant sufficient to support probable cause (see People v Medina, 37 AD3d 240, 242, [1st Dept 2007], lv denied 9 NY3d 847 [2007]). Indeed, they appeared to have little to no faith in this purported identification, and immediately pursued identification by the son in a manner that suggested that they were not seeking mere corroboration. What followed did not constitute "diligent[] [pursuit of] a minimally intrusive means of investigation likely to confirm or dispel suspicion quickly" permitting defendant's continued detention (People v Hicks, 68 NY2d 234, 242 [1986]). An officer did attempt to investigate a connection between defendant and the phone found at the scene; however, this represented a fraction of the remaining time that defendant was detained. The majority of the time was devoted to, with increasing exasperation and aggression, asking the same identification question to the same suggestible witness, some of whose answers were ultimately provided by the mother's friend, a nonwitness with no knowledge of the occurrence, while the cell phone photo was continuously displayed to the mother, until she finally gave an unequivocal identification of defendant at least 15 minutes later.
While the choice to proceed with identification via a showup, even a single-photo showup, is generally disfavored, it may be reasonable in view of its temporal and spatial proximity to the crime (see People v Love, 57 NY2d 1023, 1024-1025 [1982]). Nevertheless, showup identification evidence "must be scrutinized very carefully for unacceptable suggestiveness and unreliability" (People v Duuvon, 77 NY2d 541, 543 [1991]). "When a defendant challenges the suggestiveness of an out-of-court viewing of defendant's likeness, the central issue presented for judicial consideration is whether the pretrial display is conducted under circumstances bearing the earmarks of improper influence and unreliability, which create the risk of mistaken identification and thus infect the truth-seeking process . . . showing one photograph of a defendant — the procedure at issue in defendant's case — carries the risk of undue suggestiveness" (People v Marshall, 26 NY3d 495, 505-506 [2015]). The procedure employed here carried that risk, and because the substances underlying defendant's conviction were received as a direct result of it, they should have been suppressed.
We have considered defendant's remaining arguments and find them unavailing or academic. 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 19, 2026

Footnotes

Footnote 1: Footage from the officers' body-worn cameras did not show the victims offering an approximation of the perpetrator's weight. Similarly, to the extent the People argue that the description also indicated that the perpetrator was similarly complected to one of the responding officers, the witness to whom this question was asked ultimately said he did not know. This witness also initially responded in the affirmative when asked if the perpetrator had any facial hair, and ultimately stated that he did not know this, either.